## CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY·· UNITED STATES.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

No. 74. Submitted December 16, 1910.—Decided February 20, 1911.

*Louisville & Nashville Railroad Company* v. *Mottley, ante,* p. 467, followed to effect that under the act of June 29, 1906, c. 3591, 34 Stat. 584, amending the act of February 4, 1887, c. 104, § 2, 24 Stat. 379, a carrier cannot accept any compensation other than cash for interstate transportation, and the delivery of such transportation in exchange for advertising is a violation of the act; and it is no defense that such a transaction is permitted by a state statute.

No state enactment can avail when the subject has been covered by an act of Congress acting within its constitutional powers. In such a case the act of Congress is paramount and the state law must give way.

THE facts, which involve the construction of provisions of the Interstate Commerce Act relating to payment of fare on railways, are stated in the opinion.

*Mr. E. C. Field,* with whom *Mr. H. R. Kurrie* was on the brief, for appellant:

There is no unreasonable discrimination in contracting with certain publications and refusing to do so with others.

The law recognizes the right of a carrier to discriminate between persons, the only restraint upon such discriminations being that they shall not be unreasonable. *Cincinnati &c. Ry. Co.* v. *Int. Comm. Comm.,* 162 U. S. 197; *Int. Comm. Comm.* v. *Baltimore &c. R. R. Co.,* 145 U. S. 263; *Northern Pacific Ry. Co.* v. *Adams,* 192 U. S. 440; *Texas & Pac. Ry. Co.* v. *Int. Comm. Comm.,* 162 U. S. 197, 220.

There is nothing in the record to show that there was any discrimination by the appellant. Appellant insists that it has the right to make this kind of a contract with publications of its own selection, provided, always, that it actually receives the money value of the transportation which it gives. Advertising is just as essential to successful operation as good train service.

Section 6 does not require the manner in which charges shall be paid to be stated in the tariffs filed by a carrier. *Int. Comm. Comm.* v. *Detroit R. R. Co.,* 167 U. S. 633; *Southern Pacific Co.* v. *Int. Comm. Comm.,* 200 U. S. 536. It has been held that the time when charges shall be paid is not required to be stated; and that the carrier may require one shipper to pay in advance, and allow another to pay at destination, and that by so doing it does not unjustly discriminate. *Little Rock &c. R. R. Co.* v. *St. Louis*

&c. R. R. Co., 63 Fed. Rep. 775; *Oregon &c. R. R. Co.* v. *Northern &c. R. R. Co.*, 51 Fed. Rep. 465, 472.

It has always been the law that charges may be paid in money value as well as in money. *Marsh* v. *Union &c.*, 9 Fed. Rep. 873; *Miami &c. Ry. Co.* v. *Port Royal &c. Ry. Co.*, 25 S. E. Rep. 153; *Gleadell* v. *Thompson &c.*, 56 N. Y. 194; *Bearse* v. *Ropes*, Fed. Cas. No. 1192; *Snow* v. *Carruth*, Fed. Cas. No. 13,144; *Bancroft* v. *Peters*, 4 Michigan, 619; *Relyea* v. *New Haven &c. Ry. Co.*, 42 Connecticut, 579; *Boggs* v. *Martin*, 13 B. Mon. 239; *Page* v. *Munroe*, 18 Fed. Cas. 10,665; *Jones* v. *Hoyt*, 25 Connecticut, 374; *Aldrich* v. *Cargo*, 117 Fed. Rep. 757; *The Success*, 7 Blatch. 551; *Woodward* v. *Int. Comm. Comm.*, 1 Biss. 403; Elliott, Railway, 2d ed., 1558; *Missouri Pac. Ry. Co.* v. *Peru &c. Ry. Co.*, 87 Pac. Rep. 80; *S. C.*, 85 Pac. Rep. 408; *Curry* v. *Kansas &c. Ry. Co.*, 48 Pac. Rep. 579; *Dempsey* v. *N. Y. Central &c. Ry. Co.*, 40 N. E. Rep. 867; *Chicago & Alton Ry. Co.* v. *United States*, 156 Fed. Rep. 558.

The insertion of the word "different" does not change the legal effect of § 6. Endlich, § 378; *McDonald* v. *Hovey*, 110 U. S. 619.

The construction contended for would lead to absurd consequences; even checks, drafts or other evidences of credit could not be received.

*Mr. Attorney General Wickersham*, with whom *Mr. Barton Corneau* was on the brief, for the United States:

Literally interpreted, § 6 of the act to regulate commerce as amended, plainly forbids the acceptance of compensation which is different either in kind or amount from that specified in the published tariffs, viz., money; and it therefore prohibits the exchange of transportation for advertising.

The word "different" in the phrase "greater or less or different compensation" means different in kind. *Washington Market Co.* v. *Hoffman*, 101 U. S. 112, 115; End-

lich, § 396; *United States* v. *Bowen*, 100 U. S. 508. Inter. Comm.. Comm. Circular No. 2-A of September 15, 1906; *State* v. *Union Pacific R. R. Co.*, 126 N. W. Rep. 859.

Whether or not the contracts in question, or any of them, actually work discriminations or preferences contrary to §§ 2 and 3, the practice of bartering commodities for transportation, if once permitted, will invite frauds upon the law, and cannot fail ultimately to result in all sorts of discriminations and preferences. This fact not only explains the insertion of the word "different" in § 6, but furnishes a conclusive reason why this court should not depart from the literal interpretation of that section. *In re Persons Free or at Reduced Rates*, 5 I. C. C. Rep. 69; *Ex parte Koehler*, 31 Fed. Rep. 315, 321; *In re Charge to Grand Jury*, 66 Fed. Rep. 146; *Int. Comm. Comm.* v. *B. & O. R. R. Co.*, 145 U. S. 263, 282; *Denaby Colliery Co.* v. *Manchester Ry. Co.*, 11 App. Cas. 97, 120; *Wight* v. *United States*, 167 U. S. 512; *Armour Packing Co.* v. *United States*, 209 U. S. 56.

Whether this or any other court has ever upheld a preference given to some particular patron and not open to all who are similarly situated, *Int. Comm. Comm.* v. *B. & O. R. R. Co.*, 145 U. S. 263; *Int. Comm. Comm.* v. *Alabama Midland Ry. Co.*, 168 U. S. 144; *L. & N. R. R. Co.* v. *Behlmer*, 175 U. S. 648; *Northern Pacific Ry. Co.* v. *Adams*, 192 U. S. 440, are not in point.

If railroad companies may accept advertising in payment for transportation, then the right of the railroad to barter transportation for any sort of commodity or any kind of consideration is at once established. What abuses it would lead to no one can tell. As to the necessity for a literal interpretation of the statute by the courts, see *Union Pacific Ry. Co.* v. *Goodridge*, 149 U. S. 580, 690; *A., T. & S. F. Ry. Co.* v. *United States*, 163 Fed. Rep. 111, 113.

The undoubted purpose of § 6 was to compel carriers to

fix rates which would be uniform in their operation, *N. Y., N. H. & H. R. R. Co.* v. *Int. Comm. Comm.*, 200 U. S. 361, 391; *T. & P. Ry. Co.* v. *Abilene Cotton Oil Co.*, 204 U. S. 426, 439, and since the statute in that respect is remedial, it is "entitled to receive that interpretation which reasonably accomplishes the great public purpose which it was enacted to subserve.

The necessity of adopting the literal interpretation of § 6 is also shown by a comparison of its language and purpose with the language and purpose of §§ 2 and 3. *American Express Co.* v. *United States*, 212 U. S. 522.

The literal interpretation of § 6 will not cause any of the inconveniences or inconsistencies suggested by appellant.

It is claimed that the publisher could hand over $500 in money for transportation which could be handed back for advertising without violating the law, and that it is absurd to forbid the parties from doing directly what they could undoubtedly do indirectly. The obvious answer is, however, such a transaction would be a mere barter of transportation for advertising, however cleverly its real nature might be concealed. The only way in which a violation of the statute could be avoided would be by *bona fide* purchase of transportation or advertising without contemporaneous agreement on the part of the seller to purchase on his part a like amount of advertising or transportation.

Section 6 undoubtedly requires the kind of compensation to be specified in the published tariffs.

Mr. Justice Harlan delivered the opinion of the court.

By the act of Congress of February 19, 1903, further regulating commerce with foreign nations and among the States, as amended by the act of June 29, 1906, it was provided that whenever the Interstate Commerce Commission had reasonable ground to believe that a common carrier was engaged in carrying passengers or freight between

given points at less than the published rates on file or was committing any discrimination forbidden by law, the facts could be set forth in a petition in equity to the proper Circuit Court of the United States, whose duty it was made summarily to inquire into the circumstances, without formal pleadings and proceedings applicable to ordinary suits in equity. If the court became satisfied upon investigation that the facts existed as alleged, it was then by proper orders to enforce the observance of the published tariffs or direct a discontinuance of the alleged discrimination, with such right of appeal as was then provided by law to the parties interested in the traffic or to the carrier. February 19, 1903, 32 Stat. 847, 848, Pt. 1, c. 708; June 29, 1906, c. 3591, 34 Stat. 584.

The present suit was brought by the United States under that statute against the Chicago, Indianapolis and Louisville Railway Company, a corporation of Indiana which operated the lines of railroad known as the Monon Route, and extending from Chicago through Indiana to Cincinnati and from Michigan City, Indiana, to Louisville, Kentucky. The railway company was engaged in the business of carrying passengers over the above lines.

The petition alleged that on the twenty-fourth day of January, 1907, the defendant made a written contract with the Frank A. Munsey Company, publisher, at New York of Munsey's Magazine, which contained, among other provisions, the following:

"Agreement between the Monon Route (Chicago, Indianapolis & Louisville Railway Company) and........ Frank A. Munsey Co.........publisher. Entered into this.........24 day of January, 1907.

"Whereas, the said publisher issues........Munsey's Magazine.........a.........publication, published at New York City, N. Y., Chicago office 423 Marquette Building, and which has a regular circulation of........ 643,000.........each issue.

"And whereas, the said Monon Route desires to advertise in said publication, which advertising the said publisher agrees to do upon the following terms and conditions, which are mutually agreed upon:

"1st. The said publisher agrees to publish in said publication an advertisement of the Monon Route as follows:........One page 'ad' (divided as desired).......

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

said advertisement to appear........Favorably........

and occupy a space of not less than..........one page.....

and to be published as desired in issues of said publication.

"2d. In full consideration of the foregoing advertising, the Monon Route agrees to issue the following nontransferable transportation based on regular published rate:

. . . . . . . . . . . . . . . Trip tickets or mileage. . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

To the value of........Five hundred........Dollars ($500.........,) for the personal use of the publisher, his employés or immediate members of his or their families, which said transportation shall be limited for use not later than December 31, 1907.

"3d. Under no circumstances must the transportation issued under this contract be sold or transferred to or used by any other than the person to whom issued, as such sale, transfer or use would be a misdemeanor under the law.

"4th. It is understood and agreed that the transportation issued under this contract shall read to points on the Monon Route, and not to points on any other road. . . . Further, should said publisher or any person named on said tickets allow any other person to use same or offer to sell, sell or transfer the same, then said publisher agrees to pay the said Monon Route as a penalty the full rate of fare which would have been paid

for regular tickets. . . . This contract expires December 31, 1907, unless otherwise stipulated."

The petition also alleged that after that contract was entered into, and previous to April 3, 1907, the defendant railway company, pursuant to the above contract, transported over its railway from points in one State to points in other States the employés of the Munsey Company upon trip and mileage tickets issued for their benefit.

That such interstate transportation paid for according to the company's published rates, amounted to $145.10, while the only compensation received by it for transportation previous to May 10, 1907, was the publication in the March issue of the Munsey Magazine of one-fourth of a page advertisement of the Monon Route which the parties valued at $125;

That while the railroad company was thus transporting the Munsey employés it contemporaneously transported over its lines between the same points other persons and exacted and received in money from them, in each instance, the full amount of its published rates and fares, the conditions and circumstances of the transportation being the same in the cases of employés and others;

That in accordance with the contract in question the railway company was, at the date of this suit, still furnishing interstate transportation to the publisher of Munsey's Magazine and the members of his family and to his employés and the members of their families;

That the railway company had entered into like contracts with other publishers of magazines, newspapers and similar periodicals to the number of two hundred and fifty-one, under the terms of which latter contracts the company, at the date this suit was commenced, was furnishing interstate transportation over its lines to such persons as were from time to time designated by the publishers last above mentioned, but not receiving compensation in money in any instance when furnishing trans-

portation under those contracts for the services rendered by it; and,

That the above contracts between the railway company and the publishers of magazines and newspapers are in violation of the act of Congress regulating commerce, particularly §§ 2 and 6, and also § 3 of the above act, approved February 19, 1903,—in this, that those contracts require the furnishing of interstate transportation at rates which, in each instance, "are less than and different" from the rates contemporaneously exacted from the general public under substantially similar circumstances and conditions.

The company, in its answer, averred that the money value of the space purchased from the Munsey Company under the contract was $500 as determined and fixed by the rate to the public, and that it was to pay therefor $500 in value of passenger transportation issued and based on regularly published rates, so that the money value of the advertising space purchased and the money value of the transportation furnished was the same; and that its arrangements for advertising space with other publications were based on the "regular published rate." The answer contains this paragraph: "Defendant admits that it has entered into a large number of other contracts for advertising space by written contracts providing substantially the same as the contract with the Munsey Company as aforesaid, and that in each case, pursuant to the terms and conditions of each of said contracts, the publishers named in said contracts and in each of them sells to this defendant advertising space in the par money value at the usual market rate therefor, and that this defendant issues and pays therefor in transportation 'based on the regular published rates' in money value equal to the money value of said advertising space."

The answer further avers that all the company's corporate powers as a common carrier are derived from an

Indiana statute which prohibits the railway company from giving free tickets, free passes or free transportation, but which, in express words, authorizes the company to issue transportation in payment *for printing and advertising*.. It denied that the purchase of advertising space by a common carrier constituted any part of interstate commerce ,or that Congress has any constitutional power to prohibit it from doing so.

It was admitted at the hearing "that said defendant had, subsequent to the filing of said petition, executed contracts similar in terms to the ones set forth in said petition, expiring December 31, 1908, for the exchange of interstate transportation for advertising, under the same conditions as those set forth in the contracts described in said petition, and that said case should be heard and determined precisely as if it were alleged in the pleading that said defendant had made said contracts expiring December 31, 1908."

The Circuit Court heard the case upon the pleadings and proofs and adjudged that the acts of the railway company, as alleged in the petition, were sustained by the evidence (as they undoubtedly were), and were in violation of the commerce act of February 4, 1887, of the act further to regulate commerce approved February 19, 1903, and of the acts amendatory thereof.

It was further adjudged, in accordance with the petition of the Government, "that the defendant, its officers and agents, and any and all persons whomsoever, acting on its behalf, be, and they are hereby, enjoined from further executing each and every one of said contracts now pending for the exchange of transportation for advertising space; and that they be, and they are hereby, enjoined from issuing transportation in exchange for advertising space pursuant to the terms of contracts providing that said transportation shall be paid for by the furnishing of advertising space in newspapers or periodi-

cals, that they be, and they are hereby, enjoined from accepting advertisements in lieu of money in payment for interstate transportation, pursuant to agreements or contracts providing that said advertising space shall be paid for by issuing transportation; and that they be, and they are hereby, enjoined from committing any of the acts with reference to the exchange of interstate transportation for advertising space as charged in said petition."

1. The decisive question in this case is whether the contract between the railway company and the Munsey Company is repugnant to the acts of Congress regulating commerce. In other words, could the company, in return for the transportation which it agreed to furnish and did furnish to the Munsey publisher over its interstate lines, and to his employés and to the immediate members of his and their families, accept as compensation for such service anything else than money, the amount to be determined by its published schedule of rates and charges? Upon the authority of *Louisville & Nashville R. R. Co.* v. *Mottley*, *ante*, p. 467, just decided, and according to the principles announced in the opinion in that case, the answer to the above question must be in the negative. The acceptance by the railway company of advertising, not of money in payment of the interstate transportation furnished to the publisher of the Munsey magazine, his employés and the immediate members of his and their families, was for the reasons given in the *Mottley case*, in violation of the commerce act. The facts in the present case show how easily, under any other rule, the act can be evaded and the object of Congress entirely defeated. The legislative department intended that all who obtained transportation on interstate lines should be treated alike in the matter of rates, and that all who availed themselves of the services of the railway company (with certain specified exceptions) should be on a plane of equality   Those ends cannot be met otherwise than by requiring transportation to be

paid for in money which has a certain value known to all and not in commodities or services or otherwise than in money.

2. We need say but little about the Indiana statute upon which the defense is in part based. The transactions, in respect of which the Government seeks relief, being interstate in their character, the acts of Congress as to such transactions are paramount. No state enactment can be of any avail when the subject of such transactions has been covered by an act of Congress acting within the limits of its constitutional powers. It has long been settled that when an "act of the legislature of a State prescribes a regulation of the subject repugnant to and inconsistent with the regulation of Congress, the state law must give way, and this without regard to the source of power whence the state legislature derived its enactment." *Sinnot* v. *Davenport*, 22 How. 227, 243; *M., K. & T. Railway* v. *Haber*, 169 U. S. 613, 686; *Reid* v. *Colorado*, 187 U. S. 137. This results, Chief Justice Marshall said in *Gibbons* v. *Ogden*, 9 Wheat. 1, as well from the nature of the Government as from the words of the Constitution.

*Judgment affirmed.*