PENNSYLVANIA R. CO. v. MOGI et al.

(Supreme Court, Appellate Term. March 18, 1911.)

CARRIERS (§ 35*)—CHARGES—INTERSTATE COMMERCE—CARRIAGE OF FREIGHT.

Under the interstate commerce act (Act Feb. 4, 1887, c. 104, § 2, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3155]), prohibiting discrimination by special rate or device, a contract by a carrier for transportation for a less compensation than the published rate is invalid, and where at the time of a shipment neither the carrier nor the shipper had any actual knowledge of the actual weight of the goods, and the carrier received compensation based on a specified weight while the goods actually weighed more, it could recover the balance according to the schedule of rates established and filed.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 94; Dec. Dig. § 35.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by the Pennsylvania Railroad Company against Ketaro Mogi and another, copartners doing business under the firm name and style of Mogi, Momonio & Co. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Reversed, and judgment ordered for plaintiff.

Argued before GUY, PLATZEK, and GAVEGAN, JJ.

Robinson, Biddle & Benedict (Norman B. Beecher and C. W. Cunningham, of counsel), for appellant.

John J. Schwartz (David B. Buckley, of counsel), for respondents.

GAVEGAN, J. The action was brought to recover the sum of $51 freight charges for certain goods shipped by the defendants from Ocean Grove, N. J., to Indianapolis, Ind., over the plaintiff's road.

The plaintiff is a foreign corporation, and a common carrier of freight for hire, engaged solely in the business of interstate commerce.

On October 21, 1905, the defendants at Ocean Grove, N. J., ordered the plaintiff to furnish a car for the transportation of certain goods from Ocean Grove, N. J., to Indianapolis, Ind. The car was duly furnished and loaded by the defendants with said goods, consigned to themselves at Indianapolis, Ind., for which plaintiff issued its regular shipping receipt. Sixteen thousand eight hundred pounds was the actual weight of the goods, which were duly transported and delivered to the defendants at Indianapolis, Ind., on October 3, 1905. The legal freight rate as duly published and filed by the Interstate Commerce Commission on such a shipment was 75 cents per hundred pounds, thus making the sum of $126 the legal and proper charge for transportation. Of this sum, however, only $75 has been paid, and on December 20, 1905, the plaintiff demanded of the defendants the balance of $51, payment of which was refused. At the time of the shipment, neither party had any actual knowledge that the weight of the goods in this shipment was more than 10,000 pounds, and the defendants had no express notice or actual knowledge that said weight was greater until December 20, 1905. Between November 3, 1905, and December 20, 1905, the period between the delivery of the shipment and the demand for the payment of $51 herein claimed, most of the goods were disposed of at a selling price based among other things on the cost of transportation. The court below in its opinion bases its decision on the ground that the charge for 10,000 pounds was the result of a mistake pure and simple, and not the result of a wilful attempt to avoid the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. Ct. 1901, p. 3154), and under these circumstances it does not come within the intent of this act to hold the defendants liable for the freight charges herein claimed.

The rights of the parties to this action must be determined by the provisions of the interstate commerce act, which is now the supreme law of the land with regard to interstate shipments, and which was in full force and effect in 1905, when the transaction herein referred to took place.

The sections of the act to regulate commerce, material to the plaintiff's claim, are as follows:

"Sec. 2. That if any common carrier subject to the provisions of this act shall, directly or indirectly, by any special rate, rebate, drawback, or device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

Section 6 of that act reads in part:

"And when any such common carrier shall have established and published its rates, fares, and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect, or receive from any person or persons a greater or less compensation for the transportation of passengers or property, or for any service in connection therewith, than is specified in such published schedule of rates, fares, and charges as may at the time be in force."

The statute in terms makes this as much the duty of the shipper to pay the carrier its legal compensation as of the carrier to collect the same, and the federal courts have uniformly held in construing the statute that a carrier could not agree to carry for less compensation than the rate published and filed with the Interstate Commerce Commission. If such a contract is attempted to be made, it has no binding force, and the aggrieved party may recover the difference between the compensation at the rate filed and the compensation at the rate charged, irrespective of whether or not the other party has been damaged by the mistake. Texas & Pacific R. R. Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011; Gulf, Colorado, etc., Ry. v. Hefly, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910.

The point is made by the defendants that the case at bar is distinguishable for the reason that the mistake relates to the proper weight, rather than to the proper rate. The language of sections 2 and 6 above quoted is, "Greater or less compensation." Clearly, the actual weight is of as much importance in arriving at the correct compensation as the legal rate, and equal compensation for like services is the essential thing required by the interstate commerce act. "It cannot be challenged that the great purpose of the act to regulate commerce, whilst seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and destroy favoritism, these last being accomplished by requiring the publication of tariffs and by prohibiting secret departures from such tariffs, and forbidding rebates, preferences, and all other forms of undue discrimination. To this extent and for these purposes the statute was remedial, and is therefore entitled to receive that interpretation which reasonably accomplishes the great public purpose which it was enacted to subserve. * * * The all-embracing prohibition against directly or indirectly charging less than the published rates shows that the purpose of the statute was to make the prohibition applicable to every method of dealing by a carrier by which the forbidden result could be brought about. If

the public purpose which the statute was intended to accomplish be borne in mind, its meaning becomes, if possible, clearer." N. Y., N. H. & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 391, 26 Sup. Ct. 272, 50 L. Ed. 515.

From the foregoing it would appear that the plaintiff is under a positive duty to collect such charges as it has legally earned, and that it cannot waive its right to collect its legal compensation. Apparently the court below based its decision that the plaintiff cannot recover in this action upon the ground that no express agreement or willful attempt to avoid the interstate commerce act is shown. But in the cases cited from all that appears in the record the undercharge was also the result of a mistake. Certainly no willful attempt to avoid the interstate commerce act was proven. The effect of these decisions is that a violation of the interstate commerce act is a question not of intent, but of fact. "Besides, all the contentions just noticed proceed upon a mistaken legal conception that the application of the statutory prohibition depends, not upon whether the effect of the acts done is to violate those prohibitions, but whether the carrier intended to violate the statute." N. Y., N. H. & H. R. R. Co. v. Interstate Commerce Commission, 200 U. S. 361, 398, 26 Sup. Ct. 280, 50 L. Ed. 515. The United States Supreme Court in its latest decisions construing the interstate commerce act has made it quite clear that the act is an absolute prohibition against charging less than the published rates directly or indirectly; that is, by any and every method by which the result could be brought about. L. & N. R. R. Co. v. Mottley et al., 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. ——; Atlantic Coast Line R. R. v. Riverside Mills, 219 U. S. 186, 31 Sup. Ct. 164, 55 L. Ed. ——; C. I. & L. R. R. v. United States, 219 U. S. 486, 31 Sup. Ct. 272, 55 L. Ed. ——. It follows that the result accomplished in this case even conceding that the parties acted innocently and were honestly mistaken was the obtaining a rate less than the schedule filed, that such result was a violation of the interstate commerce act, that the contract between the parties was void, and that the plaintiff is entitled to receive compensation at the scheduled rates.

The judgment should be reversed, and judgment ordered for the plaintiff for the amount claimed, with costs. All concur.