SOUTHERN RAILWAY COMPANY *v.* ARTHUR LINEAR *et al.*

(*Knoxville.*   September Term. 1917.)

**CARRIERS.**   Passes to employees.   Interstate commerce.   Transportation after terminating of relation.

A contract of a railroad to furnish transportation to employees back to their home State after they quit working or are discharged is not binding under Hepburn Act June 29, 1906, chapter 3591, section 1, subd. 5, 34 Stat. 584 (U. S. Comp. St. 1916, section 8563, subd. 5), prohibiting giving free transportation, as transportation to employees or others excepted by the act is a gratuity, and cannot be a subject of contract.

Cases cited and approved:   Charleston & W. C. R. Co. v. Thomson, 234 U. S., 576; Louisville & Nashville Ry. Co. v. Mottley, 219 U '., 467; Chicago I. & L. R. Co. v. United States 219 U. S., 486.

---

FROM WASHINGTON

---

Error to Law Court of Washington County.—DANA HARMON, Judge.

HARR & BURROW, for appellant.

J. R. GARDNER, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case was tried before a circuit judge without the intervention of a jury. He decided the controversy

in favor of the defendants in error, and, on appeal to the court of civil appeals, that judgment was affirmed. We think there was error in these judgments. The facts disclosed by the record are these:

The railway company, some time before the suit was brought, sent an agent to Union Springs, Ala., and there employed Linear and several other persons to work for it on its lines of railway. Giving the evidence the construction most favorable to the contention of the defendants in error, the contract was that the railway company should pay the defendants for their services $1.25 a day, and should, in addition, feed them; furthermore, that it would furnish free transportation to the defendants in error to their place of work, and would likewise furnish them like transportation to return to their homes every two weeks. Their work was to be done in North Carolina and in Tennessee. After they arrived in North Carolina, they made inquiries of the boss under whom they were placed, with a view to ascertaining whether they had rightly understood the terms of the contract. The boss replied that, according to his instructions, he was to retain, out of their compensation, 25 cents for their meals per day, and that he had no instructions about furnishing them free transportation to Alabama and back. They were not satisfied with the retention of 25 cents for their meals, nor with the response of the boss concerning the free transportation, but they went to work. In a day or two the superintendent came, and the matter of free transportation was taken up with him. He told

them that it would be furnished to half of the men every two weeks. However, the transportation to Alabama was not furnished. After the job was completed in North Carolina, they were transported to Johnson City to work. At this place they declined to work any further, and were discharged. They then demanded their free transportation to their homes in Union Springs, Ala. It was refused, and the present suit was brought. The trial judge and the learned court of civil appeals held that, inasmuch as the stipulation concerning the free transportation was a part of the contract, and the railway company had failed to furnish it, a judgment should be rendered against it for the amount, and this was accordingly done, $12.10 in each case.

The defense of the railway company was that they were not permitted, under the law, to contract to furnish free transportation, that they could only furnish transportation to such persons as were in their employ, and that, at all events, after the defendants in error were discharged, it was unlawful for the railway company to furnish such transportation.

The amendment of June 29, 1906, to the Hepburn Act reads as follows:

"No common carrier subject to the provisions of this act shall, after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employees and their families, its officers, agents, surgeons, physicians, and attorneys at law; to ministers of religion, traveling secretaries of railroad

Young Men's Christian Associations, inmates of hospitals and charitable and eleemosynary institutions, and persons exclusively engaged in charitable and eleemosynary work; to indigent, destitute and homeless persons, and to such persons when transported by charitable societies or hospitals, and the necessary agents employed in such transportation; to inmates of the national homes or State homes for disabled volunteer soldiers, and of soldiers' and sailors' homes, including those about to enter and those returning home after discharge [and boards of managers of such homes]; to necessary care takers of livestock, poultry, and fruit; to employees on sleeping cars, express cars, and to linemen of telegraph and telephone companies; to railway mail service employees, postoffice inspectors, customs inspectors, and immigration inspectors; to newsboys on trains, baggage agents, witnesses attending any legal investigation in which the common carrier is interested, persons injured in wrecks and physicians and nurses attending such persons: Provided, that this provision shall not be construed to prohibit the interchange of passes for the officers, agents, employees of common carriers, and their families; nor to prohibit any common carrier from carrying passengers free with the object of providing relief in cases of general epidemic, pestilence, or other calamitous visitation. . . . Any common carrier violating this provision shall be deemed guilty of a misdemeanor and for each offense, on conviction, shall pay to the United States a penalty of not less than one hun-

Southern Ry. Co. v. Linear.

dred dollars, nor more than two thousand dollars, and any person, other than the persons excepted in this provision, who uses any such interstate free ticket, free pass, or free transportation, shall be subject to a like penalty."

The defendants in error not being servants of the plaintiff in error at the time the free transportation was refused at Johnson City, the plaintiff in error could not furnish it without being liable to the penalty denounced in the act of Congress just quoted. There is no exception for such a case in the act itself, and the court can make none. A case in point is found in Barnes' Interstate Transportation, section 598. It was there said that the commission did not construe the law as preventing the carrier from giving free transportation over its lines to the household and personal effects of an employee who was required to remove from one place to another at the instance of or in the interest of the carrier by which he was employed, but that where a carrier gave free transportation in such case to an employee to the point where he was to be employed, and later dismissed him, the commission could not require it to return the household effects to the point from which they were first moved.

On the question whether the carrier can make a contract binding itself to issue free transportation, the case of *Charleston & W. C. R. Co.* v. *Thompson,* 234 U. S., 576, 34 Sup. Ct., 964, 58 L. Ed., 1478, is in point. In that case it appeared that Mrs. Thompson sued the railway company to recover damages for injuries in-

flicted upon her by the company's negligence. She was the wife of an employee, and was traveling on a pass which exempted the company from liability for such damages. This fact was pleaded by the railway company, but the plea was stricken out by the court of first instance. The court of appeals held that the stipulation was binding in general, but that the Hepburn Act created an exception, and that a so-called free pass under that act issued to a member of an employee's family really was not a free pass, but was issued upon the consideration of the services of the employee. Addressing itself to this question, the supreme court said:

"The main question is whether, when the statute permits the issue of a 'free pass' to its employee's and their families, it means what it says. The railroad was under no obligation to issue the pass. It may be doubted whether it could have entered into one; for then the services would be the consideration for the duty and the pass, and by section 2 it was forbidden to charge 'a greater or less or different compensation' for transportation of passengers from that in its published rates. The antithesis in the statute is between the reasonable charges to be shown in its schedules and the free passes which it may issue only to those specified in the act. To most of those enumerated the free pass obviously would be gratuitous in the strictest sense, and when all that may receive them are grouped in a single exception, we think it plain that the statute contemplates the pass as gratuitous

in the same sense to all. It follows, or rather in saying the same thing in other words, that even on the improbable speculation that the possibility of getting an occasional free pass entered into the motives of the employee in working for the road, the law did not contemplate his work as a conventional inducement for the pass, but, on the contrary, contemplated the pass as being what it called itself, free.''

From the foregoing excerpt it is apparent that there can be no contract to issue free transportation to any one, but it must always be a gratuity, and only then in the excepted cases. See, also, *Louisville & Nashville Railway Co.* v. *Mottley*, 2:19 U. S. 467, 31 Sup. Ct., 265, 55 L. Ed., 297, 34 L. R. A. (N. S.), 671, and *Chicago, I & L. R. Co.* v. *United States,* 219 U. S., 486, 31 Sup. Ct., 272, 55 L. Ed., 305.

We have nothing to do with the moral aspect of the question; certainly the railway company should not have deceived these people by making the futile promises referred to, but we have to deal with only the legal question as to whether it could lawfully bind itself. Under the authorities cited it is perfectly clear there could be no two opinions on this subject. The purpose of the Congress was to root out and utterly destroy the practice of furnishing free passes by interstate carriers, except in the reserved cases; and the supreme court of the United States, in furtherance of this policy, has construed the act very strictly, as the quotation supra shows. It is our duty to follow the law as laid down by this supreme authority,

and our sympathy for these poor people can in no wise alter the obligation upon us to discharge the duty imposed.

It results that the judgment of the court of civil appeals and of the trial court must be reversed, and the suits dismissed, in so far as they are based upon a claim for compensation for the failure to furnish the free transportation.