## FULLERTON LUMBER CO. v. CHICAGO, M., S. P. & P. R. CO.

Circuit Court of Appeals, Eighth Circuit.
November 15, 1929.

No. 8572.

Stanley S. Gillam, of Minneapolis, Minn., for appellant.

A. C. Erdall, of Minneapolis, Minn. (F. W. Root and C. O. Newcomb, both of Minneapolis, Minn., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

WOODROUGH, District Judge. [1] Appellant, Fullerton Lumber Company, doing business at Kimball, S. D., gave its check on the Lombard State Bank of that city in payment of freight charges on a carload of coal consigned to it and carried in interstate commerce. The local agent for the railroad company accepted the check as payment and receipted the freight bill. The check was not presented for payment to the bank on which it was drawn until after the bank had closed its doors, which was six days after delivery of the check, and consequently it was never paid, although the lumber company had at all times sufficient deposit with the bank to cover it.

The suit of the railroad company was to collect the freight charges, and the lumber company pleaded in answer that the freight charges had been paid. The railroad replied that it had received the check of the lumber company, but that said check was duly presented to the bank and payment refused, and it denied that the freight charges had been paid.

The theory of the lumber company on the trial to the court (jury having been waived) was that the railroad company was negligent in not presenting the check for pay-ment, and that under the law merchant the freight was paid. The railroad company contended that it is unlawful for it to receive or accept anything but money in payment of freight charges; that its freight charges in this instance were not so paid in money, and therefore it was entitled to recover. The trial court sustained the contention and rendered judgment for the railroad company accordingly. Thereafter the lumber company moved the court for leave to amend its answer so as to include a counterclaim for damages for the railroad's negligence in not properly dealing with or presenting for payment the check involved in this action. The motion was denied, and both the judgment and this ruling on the motion are presented for review.

We are satisfied that the trial court did not err in rendering judgment for the freight charges, and approve the conclusions stated by the trial court as follows:

"The Interstate Commerce Commission adopted a rule dated September 15, 1906, known as Conference Ruling 207, reading as follows:

" '207. Payment for Transportation.— Nothing but money can be lawfully received or accepted in payment for transportation subject to the act, whether of passengers or property, or for any service in connection therewith, it being the opinion of the Commission that the prohibition against charging or collecting a greater or less or different compensation than the established rates of fare in effect at the time, precludes the acceptance of service, property, or other payment in lieu of the amount of money specified in the published schedules.' "

"The foregoing rule of the Interstate Commerce Commission has the force and effect of United States Statute, and it must follow that the payment by the check was unlawful and that the plaintiff herein is entitled under the law to recover in this suit the charges for the freight which have never been legally paid. C. I. & L. Ry. Co. v. U. S., 219 U. S. 486, 31 S. Ct. 272, 55 L. Ed. 305; N. Y. C. & H. R. R. Co. v. Gray, 239 U. S. 583, 36 S. Ct. 176, 60 L. Ed. 451; Eggleston v. Plowman, 49 S. D. 609, 207 N. W. 981, 44 A. L. R. 1231."

In the case of L. & N. R. R. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671, cited by the trial court, the declaration is found in the third syllabus, "the statute means that transportation shall be paid for by all alike and only in cash," and the exhaustive opinion of the court justifies and settles the conclusion. It

is reiterated and adhered to in C. I. & L. Ry. Co. v. U. S., 219 U. S. 486, 31 S. Ct. 272, 55 L. Ed. 305, and followed in L. & N. Ry. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665, and N. Y. C. & H. R. R. Co. v. Gray, 239 U. S. 583, 36 S. Ct. 176, 60 L. Ed. 451.

In the case of Eggleston v. Plowman, also cited by the trial court, it appeared that a taxpayer had delivered a draft to the county treasurer in payment of taxes. The county treasurer held the same for three weeks and until after the bank had failed. The statute of the state forbade the payment of taxes in anything but money, and the court said:

"It is the usual rule, in the absence of an express agreement otherwise, that payment by draft or check is conditional payment only, ripening into absolute payment when the draft or check is in fact paid. These propositions are conceded by appellant, but he undertakes to apply to the defendant as a public official the same rule that would obtain between private individuals, and to maintain that the draft, although conditional payment only when offered, yet, having been retained by the defendant instead of being refused and returned, defendant's want of diligence in presenting it for payment operates to extinguish plaintiff's obligation.

"We are of the opinion that this rule, applicable between private individuals, cannot govern as between an individual, whose duty it is under the law to pay his taxes and pay them in money, and a public officer, whose duty it is to collect the taxes and collect them in money."

On the question whether a counterclaim for damages for losses arising out of the shipment may be interposed in this kind of an action to collect freight charges, there is conflict of federal decisions. It appears that the trial courts in this circuit confine the issues and the trial in the cases to the freight charges, and we think this conforms to the intent of Congress reflected in the acts relating to interstate commerce. A paramount purpose of the regulation of carriers is to compel uniform treatment of shippers, and the exaction of the published freight charges in cash payment from each and all shippers alike is a necessary step. To that end carriers are compelled to sue where through mistake or otherwise an undercharge has been made or collection has failed, and such suits are often burdensome to the carriers and instituted with reluctance by them. If the suits are to afford occasion to litigate all the various claims shippers may make against carriers, the whole intent and purpose of Congress will be defeated. Instead of an aid to the uniform collection of the same cash charges from all shippers, the suits would inevitably open the door to gross discriminations under color of counterclaims and offsets which the courts could not prevent. In fact, a measure of discrimination is present as soon as a counterclaim is permitted in a carrier's suit for freight charges. Shippers who have rare dealings with carriers and no claims must submit to judgment as soon as their cases are reached and their debt for freight charges proved against them. Other shippers who have frequent dealings and claims may wait until issues are formulated upon their counterclaims or offsets and then they cannot be adjudged to pay their freight charges until all such matters of counterclaim and offset have also been litigated and determined. At the end of the litigation such shippers, if successful, will not be compelled like others to pay their freight charges in cash, but their freight bills will practically be otherwise discharged. Discriminations and preferences have taken many forms in the past and the intention of Congress to abolish them all is clear. The federal courts are also bound to the same purpose, and, as the practice of permitting counterclaims in these suits tends to defeat the purpose, the practice should not be permitted even though there is a statute of the state sanctioning counterclaims generally in law actions.

We agree with the conclusions of Judge Munger in C. & N. W. Ry. Co. v. Stein (D. C.) 233 F. 716; Judge Wade in Illinois Central R. R. Co. v. Hoopes (D. C.) 233 F. 135; and Judge Cochran in Penn. R. R. Co. v. So. Car. Produce Ass'n, 25 F. (2d) 315. The decisions to the contrary have received careful consideration but we do not deem them controlling. C. & N. W. Ry. Co. v. Tecktonius Mfg. Co. (D. C.) 262 F. 715; Wells Fargo & Co. v. Cuneo (D. C.) 241 F. 727; Payne v. Clarke (D. C.) 271 F. 525; Nashville C. & St. L. Ry. Co. v. Tennessee Mill Co., 143 Tenn. 237, 227 S. W. 443. The trial court rightly denied the motion to permit a counterclaim to be presented.

The following paragraph appears in the "Findings of Fact and Conclusions of Law" made by the trial court:

"This decision and the following judgment is made without prejudice to the defendant to bring an action against the plaintiff or its assignor for loss resulting from the failure to present the check for payment within a reasonable time, or any other negligence or negligent acts on the part of this plaintiff or its assignor."

The judgment following is in the ordinary form of money judgment for the amount due, interest, and costs, and awarding execution.

This court affirms the judgment entered by the trial court because the evidence and facts found compelled that judgment.

We express no opinion as to the effects of the litigation in any other controversy that may arise between the parties.

The judgment is affirmed.