In the Matter of **PENN CENTRAL
TRANSPORTATION COMPANY,**
Debtor.

Application of Trustees for order direct-
ing certain shippers and others to pay
amounts owing to the Debtor.
No. 70–347.

United States District Court,
E. D. Pennsylvania.
Jan. 31, 1972.

Blank, Rome, Klaus & Comisky by Marvin Comisky, and Goncer M. Krestal, Philadelphia, Pa., Sp. Counsel for Trustees of Penn-Central Transportation Co.

Dilworth, Paxson, Kalish, Levy & Coleman by Bruce W. Kauffman, Philadelphia, Pa., for Irving Trust Co.

Wolf, Block, Schorr & Solis-Cohen by Michael L. Temin, Philadelphia, Pa., for General American Transportation Co. and The David J. Joseph Co.

Duane, Morris & Heckscher by Henry T. Reath, Philadelphia, Pa., for United States Steel Corp.

Thomas G. Denny, for Stockard Shipping & Terminal Corp.

Duane, Morris & Heckscher by Reeder R. Fox, Philadelphia, Pa., for Harry Defler Corp.

Montgomery, McCracken, Walker & Rhoads by John S. Estey, Philadelphia, Pa., for Republic Steel Corp., D. H. Overmyer, Inc., Miller Lumber Co., Inc., Ohio Brass Co., and North American Coal Co.

Isadore Gottlieb, Philadelphia, Pa., for Massachusetts Lumber Co.

Drinker, Biddle & Reath by Raymond K. Denworth, Jr., Philadelphia, Pa., for Wire & Cable Dept., General Electric Co. and General Electric Co.

Anthony J. Visco, Jr., Philadelphia, Pa., and Clarence William Vandegrift, New York, N. Y., for Universal Carloading & Distributing Co., Inc.

William K. Klenk, II, Philadelphia, Pa., for Palisades Food Products, Inc.

John F. K. Cassidy, Syracuse, N. Y., for REA Express, Inc.

David D. Day, Pottstown, Pa., for Bermec Corp. a/k/a Berman Leasing Co.

Raspin, Espenshade, Heins & Erskine by Paul Matzko, Philadelphia, Pa., for Connecticut Coal, Inc.

Al Watrin, for Consolidated Freightways, Inc.

Ballard, Spahr, Andrews & Ingersoll by Richardson Blair, Philadelphia, Pa., for Pierce Phelps, Inc.

Fox, Rothschild, O'Brien & Frankel by Nochem S. Winnet, Philadelphia, Pa., for First National City Bank.

Clark, Ladner, Fortenbaugh & Young by W. Charles Hogg, Jr. and Edward Toole, Philadelphia, Pa., for Committee of Interline Railroads.

Herr & Herr by Philip C. Herr, II, Philadelphia, Pa., for Alan McIlvain Co.

Ned Stein and M. H. Walls, Philadelphia, Pa., for Max Feldbaum & Sons.

Donald M. Swan, Jr., New York City, for Bethlehem Steel Corp.

Cohen, Todd, Kite & Spiegel by S. Arthur Spiegel, Cincinnati, Ohio, for The David J. Joseph Co.

Abrahams & Loewenstein by Albert Momjian, Philadelphia, Pa., for Transco, Inc.

Meltzer & Schiffrin by Richard R. Block, Philadelphia, Pa., for Blue Bird Food Products.

Lewis H. Gold, Philadelphia, Pa., for Art Kraft Container Corp., Mindlin Co., and Lifschultz Fast Freight.

William Nelson, Dept. of Justice, for the United States.

Davis, Polk & Wardwell by Michael A. Boyd, New York City, for Morgan Guaranty Trust Co.

Re: *Application of the Trustees for an Order Directing Certain Shippers and Others to Pay Amounts Owing to the Debtor*

## OPINION AND ORDER NO. 571

FULLAM, District Judge.

The Trustees of the Debtor have filed a petition for an order directing certain shippers to pay amounts due Debtor. They assert that more than $9 million was due and owing from shippers and receivers on June 21, 1970, the date the petition for reorganization under § 77 of the Bankruptcy Act was filed, for freight service rendered prior to June 21, 1970, and that many of the shippers have offset against the freight charges amounts they claim the Debtor owes them. The Trustees assert that this violates paragraph 10 of Order No. 1, which provides in part:

"All persons, firms and corporations, . . . holding for the account of the Debtor deposit balances or credits be and each of them hereby are restrained and enjoined . . . from off-setting the same, or any thereof, against any obligation of the Debtor, until further order of this Court."

The present application involves two principal issues: (1) the extent of this Court's jurisdiction to control the right to resort to the remedy of set-off; and (2) assuming jurisdiction is found, the propriety of continuing the existing restraints against set-off.

### I. *Jurisdiction*

The recent decision of the Court of Appeals in the so-called "bank set-off cases," In Matter of Penn Central Transportation Co., 453 F.2d 520 (3d Cir., 1971) sets forth the principles governing this Court's jurisdiction to control the exercise of set-off rights and, to a lesser extent, the principles governing the exercise of that control.

The Court of Appeals has reiterated the familiar principle that if, at the time of bankruptcy, there is no bona fide dispute concerning the bankrupt's ownership of property, the bankruptcy court possesses summary jurisdiction to vindicate the Trustees' claim to that property. In the cited case the property was a chose in action, and the Court, applying this general principle, held that the bankruptcy court's determination that there is no substantial dispute as to the bankrupt's ownership of the chose in action establishes the summary jurisdiction of the bankruptcy court. This necessarily implies that the bankruptcy court possesses jurisdiction to determine

whether there is a substantial dispute concerning the ownership of the chose in action.

In the present proceeding, the question of whether there is a substantial dispute as to the Debtor's ownership of the chose in action involves not a determination of who is its proper obligee, but rather the determination of whether the chose in action exists. Crucial to this determination is the question of what occurrences prior to bankruptcy could have discharged the railroad's claims for services of carriage.

The Interstate Commerce Act provides the answer. In furtherance of the public policy against discriminatory practices, railroads are strictly regulated in their collection of charges for carriage of freight. 49 U.S.C.A. § 3(2) provides:

> "No carrier by railroad . . . shall deliver or relinquish possession at destination of any freight . . . transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination. . . ."

By its *ex parte* Order No. 73, originally adopted in 1920, the Interstate Commerce Commission permits a rail carrier to extend credit up to a maximum of 120 hours after delivery of freight, provided adequate precautions are taken to insure payment within that time. 49 C.F.R. § 16(e); *see,* for example, United States v. Pennsylvania R.R., 308 F.Supp. 293 (E.D.Pa.1969).

■ Section 6(7) of the Interstate Commerce Act provides, *inter alia*, that no carrier shall

> " . . . charge or demand or collect or receive *a greater or less or different compensation* for such transportation of passengers or property, or for any service in connection therewith . . . nor shall any carrier refund or remit in any manner or by any de-

vice any portion of the rates, fares, and charges so specified, *nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."* (Emphasis supplied)

The Supreme Court has unequivocally held that under this section a carrier may not accept in exchange for its services of carriage anything but money. Louisville and N. R. Co. v. Mottley, 219 U.S. 467, 477, 479, 31 S.Ct. 265, 55 L.Ed. 297 (1911); Chicago, I. and L. R.R. v. United States, 219 U.S. 486, 496, 31 S. Ct. 272, 55 L.Ed. 305 (1911); Fullerton Lumber Co. v. Chicago, M., St. P. and Pac. R.R., 282 U.S. 520, 51 S.Ct. 227, 75 L.Ed. 502 (1931). The Court has, however, sanctioned payment by check as the equivalent of payment in money, Fullerton Lumber Co. v. Chicago, M., St. P. and Pac. R.R., *supra*; and, where a carrier brings suit to recover freight charges, has permitted a shipper to plead and prove, by way of set-off or counterclaim, claims which it may have against the shipper for loss and damage, etc. Chicago and N. W. R. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670 (1930). But these are the only permitted variations on the general rule set forth in *Mottley* that no deviations from the provisions of the published tariff are permitted. *Mottley, supra*, 219 U.S. at 477, 31 S.Ct. 265. *See* Northeast Airlines, Inc. v. C. A. B., 345 F.2d 662, 666–668 (1st Cir. 1969).

In applying the foregoing principles to the resolution of the preliminary jurisdictional issue in the present case, it is necessary to differentiate among various respondent-shippers according to the grounds on which their claims are based. Four general categories appear:

■ 1. Certain shippers contend they have overpaid earlier bills or mistakenly paid erroneous or duplicative bills. Included among these are Chrysler Corporation and General Electric Company. In essence, these shippers assert that they have not set off, they have paid in money. Such a claim, to

the extent it is non-frivolous, presents a substantial dispute as to the existence of the railroad's chose in action. Therefore, the summary jurisdiction of this Court does not extend to a determination of the issues as to these parties unless by their consent.

2. Certain shippers contend that the Debtor has retained the proceeds from the salvage of damaged goods belonging to the shippers. Included in this category are Massachusetts Lumber Company and Thomas J. Holt Company. To the extent it is non-frivolously asserted that the Debtor has received money in this manner, I conclude that this Court, just as in category 1 above, lacks summary jurisdiction to determine the issues between the Debtor and these shippers.

However, the receipt of cash or its equivalent by the Debtor must be distinguished from the assertion against the Debtor of a claim for loss and damage or for materials supplied. As set forth previously, the assertion of such claims by a shipper cannot constitute payment for freight charges.

A shipper's claim does not constitute a defense to a carrier's claim for freight charges. Southern Pacific Co. v. Miller Abattoir Co., 454 F.2d 357 (3d Cir., 1972). Rather, it is an independent claim which is properly the subject of counterclaim or set-off. Whether a shipper should be permitted, at this time, to obtain payment on an independent claim through the remedial device of set-off is, of course, the ultimate issue to be determined in this case. In any event, there is no dispute of substance concerning the existence of an obligation to pay the freight charges and, accordingly, this Court possesses summary jurisdiction to control the shippers' resort to the remedy of set-off.

3. Another group of shippers contend that, prior to bankruptcy, there was an agreed settlement of mutual accounts between the Debtor and the shipper, with the result that the Debtor either owes money to the shippers, or is owed much less than is now being claimed by the Trustees. Among the shippers in this category are Standard Builders Supply Company, North American Coal Corporation, Thomas J. Holt Company, and to some extent at least, Bethlehem Steel Corporation. To the extent that the Debtor's claims against these companies were based on freight charges, it is clear under the principles set forth previously that they were incapable of being discharged either by unilateral set-off or by mutual agreement. Therefore, again, this Court possesses summary jurisdiction to control the exercise of the right of set-off against these claims.

4. A final group of shippers appear not to be "shippers" at all, but rather companies which exchange with the Debtor goods or services not involving the carriage of freight. It is claimed that there are formal or informal contractual arrangements under which, from time to time, the parties would "net-out" mutual debts and credits and the resulting balance would be paid. In this category are Mindlin Company, David J. Joseph Company and General American Transportation Company. To the extent that these companies are not obligated to the Debtor for freight charges, the Debtor and the companies were free to agree on what would constitute payment of the obligations. To the extent such payments of the Debtor's claims are non-frivolously asserted, this Court lacks summary jurisdiction to control set-offs against those claims.

Similarly, set-offs (against claims other than for services of carriage) fully executed prior to bankruptcy and adequately documented (for example, by vouchers, credit memoranda and the like) would defeat this Court's jurisdiction. Megan v. Continental Illinois Nat. Bank and Trust Co., 86 F.2d 508 (7th Cir. 1936); Penn Central Transportation Co. v. National City Bank, 315 F.Supp. 1281 (E.D.Pa.1970). In addition, of course, such set-offs

would be beyond the reach of Order No. 1.

## II. *Restraint of Set-Offs*

 Having concluded that the existence of claims against the Debtor does not exonerate the Debtor from its obligation to collect freight charges in cash or equivalent, but that, in the absence of bankruptcy, such claims against the Debtor can be set up by way of defense in actions brought by the Debtor to collect its freight charges, I turn now to the question of whether this Court should deprive the shippers of this procedural right, and relegate them to the proof of claim program. The existence of the power to enjoin set-offs has been confirmed by the recent decision of the Third Circuit in the bank set-off cases, *supra*; however, the exercise of discretion is not free from difficulty.

On the one hand, it appears probable that virtually all of the claims giving rise to the attempted set-offs are high priority claims, closely related to the day-to-day operation of the railroad. Moreover, a railroad which does not maintain good relationships with its shippers may quickly lose valuable customers.

On the other hand, post-bankruptcy obligations in this category are being paid on a current basis, and denial of the right of set-off with respect to pre-bankruptcy claims would, of course, be without prejudice to the recognition of the appropriate priority of such claims in the ultimate reorganization of the Debtor.

In my judgment, there are three considerations of particular importance in deciding this question. One is the desirability of treating all pre-bankruptcy claims of the same class in the same way. To permit the set-offs here claimed would be to discriminate against the vast majority of shippers, who have paid their pre-bankruptcy freight claims in full, either because they did not happen to have countervailing claims

against the Debtor, or because they conscientiously recognized the strictures of the Interstate Commerce Act and *ex parte* Order No. 73 of Commission.

Moreover, the cash needs of the reorganization must be considered. As of the time of the hearing on November 30, 1970, it appeared that set-offs aggregating nearly $9,000,000 were being asserted. More importantly, there is record basis for supposing that, as of October 26, 1970, pre-bankruptcy claims for freight loss and damage aggregating approximately $19,000,000 had been verified. See the petition (since withdrawn) for authority to pay certain freight loss and damage claims (Document No. 616). While the results of the proof of claim program are still being tabulated and have not been made a part of the official record, the Court is advised informally that proofs of claim for pre-bankruptcy freight loss and damage may exceed $45,000,000 in amount. It is more nearly consistent with the overall purposes of Section 77 that these claims should all be disposed of in the normal course of the reorganization proceeding, rather than that the current operating revenues of the Debtor should be jeopardized by permitting set-offs.

The third factor weighing heavily in the balance is that the Trustees, in the exercise of their mature business judgment, recognizing their obligation to treat all parties fairly, have requested that set-offs be restrained. Given the fact that the Debtor is not yet able to pay even its current real estate taxes or leased line obligations, the Trustees' judgment as to the most equitable course to follow is, in my opinion, correct. Set-offs should not be permitted at this time.

## III. *Remedy*

Entry of a specific order is not feasible on the present record. In view of the lapse of time,[1] it is probable that many of the respondent shippers originally named have since paid their ac-

---

1. Disposition of this matter was postponed pending the decision of the Court of Ap- peals in the bank set-off cases, cited in the text.

counts. Moreover, the present record does not afford an adequate basis for determining which of the respondent shippers may properly claim that they have paid their freight claims, as distinguished from merely asserting a countervailing claim of their own. Accordingly, an order in general terms will be entered, with leave to the Trustees to submit an appropriate form of further order or orders to implement the views herein set forth.