### 3285.  BATTLE *v.* ATKINSON, receiver.

1. Where an action is brought by a carrier to recover freight charges upon a shipment delivered by the carrier to the defendant without requiring payment of the freight, it is permissible, under the procedure in this State, for the defendant to file a plea of recoupment, setting up that the carrier damaged the shipment, and thereby to set off the amount of these damages against the plaintiff's recovery, and, if the damages exceed the amount of the freight charges, to recover a judgment against the carrier for the excess.

2. Under the act of Congress commonly known as the "Hepburn act" (Act July 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), a common carrier can not accept anything but money in payment of freight and other transportation charges. Nevertheless, if in the course of the transportation the carrier has damaged the goods, and has delivered them without requiring payment of the charges at the time, and brings an action against the shipper for the recovery of the charges, there is nothing in the letter or the spirit of the act of Congress which prevents the defendant from filing a plea of recoupment, alleging the damages done to the shipment, and setting them off against the plaintiff's recovery of the freight charges, and, if the damages exceed the freight charges, recovering a judgment against the carrier for the excess.

DECIDED JUNE 29, 1911.

Complaint; from city court of Moultrie—Judge McKenzie. February 17, 1911.

*T. W. Mattox, T. H. Parker,* for plaintiff in error.

*J. H. Merrill, J. A. Wilkes, Rosser & Brandon,* contra.

POWELL, J.  The receiver of the Atlanta, Birmingham & Atlantic Railroad Company brought suit in the city court of Moultrie against Battle for the recovery of $387 and interest on an account for freight charges on two cars of live stock shipped from a point in Illinois to Moultrie, Ga.; it being alleged that at the time of the arrival of the live stock at destination it was important for them to be unloaded promptly, that for that reason the defendant was allowed to take possession without first paying the freight bill

and other charges, that the shipment was delivered upon the defendant's promise to pay these amounts as soon as they could be ascertained, and that he had failed and refused to do so. The defendant's answer admitted that the acount sued on was prima facie correct, that it represented correctly the amount of freight charges due upon the shipment, and that the shipment had been delivered to him without these things being paid for. He denied that he had made any express promise to pay them, but admitted that he would be liable therefor, were it not for the other matters which he pleaded, namely, that the shipment was delivered in bad condition, having been damaged in transit, and that he accepted the shipment from the agent of the railroad company on the understanding that the damages would be adjusted and paid within a few days, which had not been done; that the damage caused to the shipment in the course of transportation amounted to $1,225, for which amount he pleaded recoupment against the plaintiff's claim, and a judgment for the excess. The plaintiff demurred to this answer, contending first that it was an effort to set off a cause of action ex delicto against a cause of action ex contractu, which is not permissible in this State, and then that to allow the defendant to maintain this defense against the suit for freight charges would be in violation of the act of Congress of June 29, 1906, which provides: "No carrier shall refund or remit, in any manner or by any device, any portion of the rates, fares, and charges so specified." The court sustained the general demurrer to the defendant's answer and struck the defense.

1. The first question presented is one of local jurisprudence. It merely involves the question of whether a defendant, under the procedure in this State, can recoup damages to a shipment in an action brought by a carrier for the recovery of the freight charges. This question is determined by the code of this State. The Civil Code (1910), § 4350, provides: "Recoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages, for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the same contract." Section 4353 provides: "Recoupment may be pleaded in all actions ex contractu, where from any reason the plaintiff under the same contract is in good conscience liable to defendant. And in all cases where, under the laws of this State,

recoupment may be pleaded, if the damages of the defendant shall exceed, in amount, those of the plaintiff, the defendant shall in such cases recover of the plaintiff the amount of such excess." Whether recoupment may be pleaded or not depends, not so much upon whether the defendant who seeks it asserts it as if it arose ex contractu or ex delicto, but upon whether, for any reason the plaintiff in good conscience is liable to the defendant for the amount under the same contract. The plaintiff in this case sued to recover compensation for the services it had performed in the execution of its part of the contract, and the defendant seeks to recoup certain losses which he incurred by reason of the fact that there was a failure on the plaintiff's part to perform this contract as it should have been performed. Therefore the plea of recoupment was permissible, under the practice in this State.

2. The other point presents a Federal question. Is there anything in the act of Congress, commonly known as the "Hepburn act," which would prevent a court from allowing the defendant to take advantage of this right of recoupment as against the carrier's suit to recover charges upon a shipment? Under the act of Congress and the decisions that have been made in reference thereto relating to the carrier's charges for interstate shipments, it is now settled beyond controversy that no device or arrangement of any kind is permissible by which the carrier can accept anything but money in payment of freight charges, and that the sum so charged must be the published rate applicable to all persons alike and subject to no rebate for any cause whatever. The act of June 29, 1906, amending the previous law, prohibited the carrier from charging, collecting, or receiving from any person or persons, not only a "greater or less compensation" for any services to be rendered than is charged, collected, or received from all other persons for like services, but also from charging, collecting, or receiving "different compensation;" and to require one person to pay in money and to allow another person to pay in commodities or in promises, or in any other way than in money, violates this prohibition. L. & N. R. Co. *v.* Mottley, 219 U. S. 467 (31 Sup. Ct. 265) ; Chicago Ry. Co. *v.* United States, 219 U. S. 486 (31 Sup. Ct. 272). The carrier can not agree to collect less than the published rate from the shipper in consideration of a release of a claim for unliquidated damages arising out of other transactions. Union Pac. Ry. Co. *v.*

Goodridge, 149 U. S. 690 (13 Sup. Ct. 970, 37 L. ed 896). This much may be taken as established; and still, with this as one of the postulates of the proposition before us, we are of the opinion that the court has the right to allow the plea of recoupment, and to allow the defendant to avail himself of the defense, provided he makes proof of the facts at the trial. The established rates and charges are allowed and are payable as compensation for the performance of a contract of carriage executed according to its express and implied terms, and there is nothing in the letter or the spirit of the Federal statute on the subject tending to defeat or diminish the carrier's liability for damages arising from its failure to perform its contract accordingly. The contract of the carrier is not merely for transportation, but for safe transportation, for the carrying of goods without causing damage thereto, and even for the insuring of their safety to the extent of the recognized rule as to the liability of a common carrier as a quasi insurer of goods bailed to it for carriage. If the carrier has completed transportation and has collected the usual charges from the shipper, but has damaged the goods or has allowed them to become damaged by causes for which it is liable, the shipper has a right of action against the carrier for the damage, and these damages are payable in money, just as the carrier's claim for transportation charges is payable in money. The United States Supreme Court referred to this principle (that the carrier must pay as well as be paid only in money) in the Mottley case, supra, saying, "The passenger has no right to buy tickets with services, advertising, releases, or property, nor can the railroad company buy services, advertising, releases, or property with transportation."

Here we have a case where the carrier did not receive cash for transportation, and where it did not pay cash in settlement for the damages it had done to the shipment; and it brings its action against the shipper, asking the court to lend the aid of its processes for the collecting of the money due for the freight charges, and the defendant merely asks the court, while it has both parties thus before it, also to collect for him the money due by the carrier for its delinquency in executing the same contract. The amount due to the one party is liquidated, and the amount due to the other is unliquidated; but the court has the means and the power to liquidate the latter claim, and to place it upon the same footing as the for-

mer. The very object of allowing pleas of recoupment and set-off and all similar pleas is to prevent a multiplicity of suits, and to enable the court, when it has all the necessary parties before it, to adjudge all their respective rights, and to render a judgment which will finally end the controversies pending between them. Now, if the shipper had sued the carrier in a separate action and had recovered judgment, say for the $1,200 he alleged to be the amount of the damage done to the shipment, and the carrier had paid over to him twelve $100 bills, there would certainly be nothing in the spirit or the letter of the act of Congress to prevent the shipper from taking four of these bills and paying to the carrier its claim for the freight charges. The effect of the plea in the present case is simply a prayer on the defendant's part that he be allowed to consummate this same end through the offices of the court, which the plaintiff has first invoked. It is true that the court, in rendering its judgment, will dispense with the necessity of the plaintiff's paying over the full amount of the damages, and of requiring the defendant to hand back the amount due the plaintiff, and will strike a balance, and will merely render a judgment requiring the losing party to pay the difference; but it is not with mere incidentals such as these that the act of Congress deals, or which it was intended to prohibit. It is the substance of the thing at which the act of Congress aims, and the form which the transaction assumes is immaterial. No matter how plausible or ingenious may be the form of the transaction, if the spirit or the letter of the act is violated, the transaction is illegal. And, on the other hand, any form may be adopted which does not violate the letter or the spirit of the law; and for the court to proceed to adjust the respective rights of the parties in a transaction such as this is in no sense a device for the remitting or the refunding of any portion of the rates and charges with which the act of Congress deals. It is not a means by which a particular shipper can pay anywise differently from what other shippers may pay, for every shipper standing in a similar situation may pay the same way; that is to say, the rule which we are now announcing is that the damages due to the shipper may be recouped against a suit for the freight charges in any and all cases where the carrier sues for such charges, and it appears that the carrier did not perform his contract of shipment, but damaged the goods in the course of

the transportation. We think, therefore, that the court erred in striking the defense. 　　　　　　　　*Judgment reversed.*