### ILLINOIS CENT. R. CO. v. W. L. HOOPES & SONS et al.

(District Court, S. D. Iowa, Davenport Division.     May 27, 1916.)

CARRIERS ⬗196—CARRIAGE OF GOODS—ACTION FOR FREIGHT—COUNTERCLAIM.
   Under Elkins Act Feb. 19, 1903, c. 708, 32 Stat. 847, and amendments thereto Act June 29, 1906, c. 3591, § 2, 34 Stat. 587 (Comp. St. 1913, §§ 8597–8599), which prohibit discriminations in favor of shippers, and in view of the policy of the law as shown by rulings of the courts and the Interstate Commerce Commission, a shipper cannot, on being sued by an interstate railroad company for freight charges, counterclaim for injuries to goods; the railroad company being required to institute such suits, and it opening the door to collusion and discrimination.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 879–887; Dec. Dig. ⬗196.]

At Law. Action by the Illinois Central Railroad Company against W. L. Hoopes & Sons and others, in which defendants counterclaimed. Demurrer to counterclaim sustained.

Helsell & Helsell, of Ft. Dodge, Iowa, and Cook & Balluff, of Davenport, Iowa, for plaintiff.

J. F. Devitt, of Muscatine, Iowa, for defendants.

WADE, District Judge. Plaintiff's action is for unpaid freight charges. The defendant answers, and also files a counterclaim for damages based upon alleged injury to the goods shipped. The plaintiff demurs to the counterclaim:

"For the reason that a claim for loss and damage growing out of a freight shipment does not constitute a lawful offset against the claim of the interstate carrier for unpaid freight charges."

The demurrer is in effect a motion to strike the counterclaim, and the question is fairly presented whether a shipper can, when the freight which he justly owes is demanded, refuse to pay because of a claim for damages to the goods shipped. It simply involves the question of whether, in view of the spirit and purpose of the Elkins Act and amendments thereto, the courts should permit a counterclaim of this kind in an action to enforce the payment of charges for freight.

"The purpose of Congress [in this legislation] was to cut up by the roots every form of discrimination, favoritism, and inequality." L. & N. R. Co. v. Mottley, 219 U. S. 467, 31 Sup. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671.

The courts and the Interstate Commerce Commission have uniformly frowned upon every device and subterfuge adopted, which in any manner permitted any discrimination whatsoever between shippers.

The railway company cannot accept any compensation other than cash for interstate transportation. C., I. & L. Railway Co. v. United States, 219 U. S. 486, 31 Sup. Ct. 272, 55 L. Ed. 305.

---

⬗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The railway company cannot extend credit to one shipper, while other shippers are compelled to pay promptly. Hocking Valley Ry. Co. v. United States, 210 Fed. 735, 127 C. C. A. 285.

A carrier cannot waive the statute of limitations in defending in an action for damages to freight. Phillips v. Grand Trunk Ry. Co., 236 U. S. 662, 35 Sup. Ct. 444, 59 L. Ed. 774.

A carrier is not liable for damages resulting from a mistake in quoting a rate less than the full published rate. Ill. C. R. Co. v. Henderson Co., 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290.

Rule 48 of Conference Rulings of the Interstate Commerce Commission holds:

"A shipper, having a money demand against an interstate carrier, sought· to offset it against the amount of a freight bill which he owed the carrier upon a shipment of merchandise. May this be lawfully done? Held, that the two transactions have no relation one to the other, and that such a deduction from the lawful charges on the shipment could not be made."

The question involved in this case came before Judge Munger in C. & N. W. Ry. Co. v. Stein Co., 233 Fed. 716, and in a memorandum opinion he held:

"If a shipper may be permitted to set off, in an action for freight earned by a carrier, claims for damages which the shipper alleges he has sustained, the court must prevent the usual right to make compromise of such suits, and must undertake the impossible task of holding the carrier to diligence and good faith in preparing and presenting its defense, in order to prevent the granting and receiving of rebates by insiduous agreement between the parties with reference to the disposition of the suit. The public policy evinced by the acts of Congress relating to interstate commerce requires the denial of the right to set-off in such cases, leaving the shippers an independent action to enforce any rights that belong to them."

I am in full accord with these views expressed by Judge Munger. It is the duty of the carrier to collect all freight charges, and, where necessary, to commence actions to enforce payment. To perform this duty it is necessary that the carrier shall commence action in the district where the shipper resides. Carriers are often compelled to maintain actions in districts, and even in states, far removed from the district in which suits could be maintained against them. Very often the suits are for small amounts, and if the shipper can, by counterclaim, acquire jurisdiction of the carrier in an action for damages to freight, he can force the carrier to spend much more in prosecuting its action for freight charges than the freight charges amount to.

A few years ago the nation was startled when it was found that favorite shippers were getting rich upon the rebates granted by carriers. One of the devices used in granting such rebates was for the shipper to make a fictitious claim for damages to freight, which was promptly allowed. To permit counterclaims in these actions for freight charges would simply open the door to a renewal of this method of rebate; at least, it would cast suspicion upon the transactions—especially in every case where a compromise was effected. Compromises are favored in law. If the defendant in this action has a valid claim for damages, both parties should be permitted to exercise their right to compromise the action; but, if such compromise were effected in a transaction involving the collection of freight charges, the court would be compelled to supervise it with the utmost care, in order, as

Judge Munger expresses it, "to prevent the granting and receiving of rebates by insiduous agreement between the parties."

So important is it that the collection of freight charges should be uniform as to all shippers, so important is it that it be above suspicion of favoritism, that I feel that it is against public policy to permit a counterclaim of this kind to be pleaded, and the counterclaim will be stricken out.