## JOHNSON–BROWN CO. v. DELAWARE, L. & W. R. CO.

(District Court, S. D. Georgia, Albany Division. February 20, 1917.)

1. EQUITY ⬤119—PROCESS—SUBSTITUTED SERVICE—ORDER—NECESSITY.

Substituted service of a bill in equity against a foreign corporation, made on its attorney without any order having been procured therefor, is invalid; the proper procedure being to apply for an order for such service, accompanied by an affidavit showing its necessity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 296–302.]

2. CARRIERS ⬤177(4)—DAMAGE TO FREIGHT—LIABILITY OF CONNECTING CARRIER—CARMACK AMENDMENT.

Under the Carmack Amendment (Act June 29, 1906, c. 3591, § 7, pars. 11, 12, 34 Stat. 593 [Comp. St. 1913, § 8592]), making the initial carrier liable to the shipper for damages to the goods while in the hands of any connecting carrier, which superseded as to interstate shipments all remedies given by the states, a shipper cannot sue a subsequent connecting carrier to restrain recovery of freight charges, and enforce a set-off against them for damages to the goods in shipment, where there is no showing as to the carrier on whose lines the damage occurred.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 791–803.]

3. CARRIERS ⬤196—FREIGHT CHARGES—REGULATION—SET-OFF.

A plea of recoupment for damages to the shipment to defeat the railroad company's charges is contrary to the act of Congress requiring the freight to be paid only in cash.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 879–887.]

In Equity. Suit by the Johnson-Brown Company against the Delaware, Lackawanna & Western Railroad Company for injunction and equitable set-off. On motion to dismiss the bill and answer filed by defendant. Bill dismissed.

R. J. Bacon and R. H. Ferrell, both of Albany, Ga., for complainant.

James Tift Mann, of Albany, Ga., for defendants.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

SPEER, District Judge. [1] This is a bill filed to restrain an action brought by the Delaware, Lackawanna & Western Railroad Company to recover freight charges on a certain carload of melons. The defendant company is a corporation and citizen of another state. The equity suit filed here was served upon its attorney. No order of court was granted or sought authorizing such substituted service. This seems essential to its validity. In the case of Bartlett et al. v. His Imperial Majesty the Sultan of Turkey and Others (C. C.) 19 Fed. 346, it was held by Circuit Judge Wallace that an order authorizing such service would be granted upon presenting a sufficient affidavit. In Pacific Railroad v. Missouri Pacific Railway Co. et al. (C. C.) 3 Fed. 772, after pointing out that the process of a court does not extend beyond the territorial limits, except in cases to enforce a legal or equitable lien claim against real or personal property within the district where the suit is brought, Mr. Associate Justice Miller, for the court, announces:

"As regards the subpoenas served on solicitors and attorneys for persons before the court in the former suit, the course of procedure in such cases has been well settled by the former practice of this court; and that is that, before such service can be of any validity, an application to the court must be made setting forth the circumstances which render such a service on the attorney or solicitor proper, and the order obtained from the court directing that service be made, and that such service, when made, shall answer as a substitute for actual service on the party so represented by the attorney."

[2] But, if properly served, the bill cannot be maintained. It is based upon a claim that he has a right to set off damages to his melons against the freight charges of the defendant company. Now the action for freight charges was not brought against the initial carrier. Nor is it alleged in the bill that the injury sustained by the fruit occurred on the line of the defendant company. The injury resulted from delay in the shipment, but the bill does not disclose which of the succeeding or connecting carriers on whose line the delay occurred. Before the enactment of the controlling legislation of Congress on this subject, there was—

"such a diversity of legislative * * * holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own state, or for a carrier whose lines were extensive, to know without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one state to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transaction." Opinion of Mr. Justice Lurton in Adams Express Co. v. Croninger, 226 U. S. 505, 33 Sup. Ct. 151, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

The language used by the learned justice was taken from the opinion of Mr. Justice Powell in Southern Pacific Co. v. Crenshaw, 5 Ga. App. 675, 687, 63 S. E. 865. Associate Justice Lurton continues:

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that

there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it."

See, also, Texas & Pac. Ry. v. Abilene Cotton Mills, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075.

Justice Lurton continues:

"To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing federal law at the time of his action gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against a primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable."

Construing this controlling decision, we must reach the conclusion that the plaintiff's suit should have been brought against the initial carrier. That is the effect of what is widely known as the Carmack Amendment. In order to avoid the great confusion which existed on this subject, Congress, by the amendment, has afforded the shipper the most convenient means of redress from any carrier, which, by interrelation, had undertaken to transport his goods in interstate commerce. The simplicity and effectiveness of this remedy would be rendered nugatory if the shipper was at liberty to single out and sue any one or more of the succeeding carriers. The recourse of the initial carrier, if not to blame, is to adjust its loss with the succeeding carriers, which are blamable.

[3] Besides, the attempt in this bill to defeat the railroad company's charges for freight by the plea of recoupment has been held obnoxious to the act of Congress. In Chicago & Northwestern R. R. Co. v. Wm. S. Stein Co. (D. C.) 233 Fed. 716, it was held that in an action by an interstate carrier for freight charges a shipper cannot set off a claim for injuries to the goods; for the freight can be paid only in cash, and such set-offs would open the door to fraud and discrimination. The same doctrine was held and elaborated in the case of Illinois Central R. R. v. W. L. Hoopes & Sons (D. C.) 233 Fed. 135.

For these reasons, or either of them, the bill must be dismissed.