THE DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY, PLAINTIFF, v. THE HENRY NUHS COMPANY, DEFENDANT.

Submitted April 22, 1919—Decided July 15, 1919.

It is against public policy as regulated by federal legislation to permit a counter-claim for damages to goods in transit to be pleaded in a suit for the collection of freight charges upon an interstate shipment of goods.

On motion to strike out counter-claim interposed to the complaint.

Before Justice MINTURN.

For the plaintiff, *Frederic B. Scott*.

For the defendant, *Wayne Dumont*.

The opinion of the court was delivered by

MINTURN, J. The complaint alleged in legal effect a contract between the parties, whereby the railroad company was to carry goods, consisting of live stock, over its own and connecting lines to the place of destination, for which service the defendant agreed to pay the lawfully assessed rates upon the shipments in accordance with the acts of congress regulating interstate commerce, in and by which certain tariff rates, schedules and charges were filed by the plaintiff with the interstate commerce commission, for public information, and were thereby constituted the schedule of charges for the services rendered, which charges are made to include not only the compensation for transportation, but the incidental service rendered in cleaning and disinfecting the cars employed in the particular service, in accordance with the requirements of the federal department of agriculture. This service the plaintiff alleges it rendered in accordance with the provisions of these regulatory acts of congress, known as the Elkins act, and its amendments, and that for the service thus rendered the defendant is indebted to the plaintiff in the sum of $3-000. To this claim the defendant alleges in seventeen separate counts, a counter-claim for loss and damage to the shipment while in transit.

The plaintiff's insistence in this situation is, that the claim of the defendant cannot be asserted in this character of action, but must be sued upon separately, as a distinct and independent action; because of the public policy inherent in the acts of congress to which reference has been made. While the question thus presented is one of first impression in this ju-

risdiction, it has received rather extended consideration in the federal courts. The question *sub judice* is not unlike that presented in *L. & N. R. R. Co.* v. *Rice,* 247 *U. S.* 201, in which it was held that a claim based by an interstate carrier upon the provisions of a tariff duly filed, published and approved as required by the Interstate Commerce act, the result of which necessarily depended upon the construction and effect of that act, was a subject-matter peculiarly within the jurisdiction of the federal court, as a case "arising under the laws of the United States or such as grow out of the legislation of congress." That adjudication followed the determination on *Adams Express Co.* v. *Cronniger,* 226 *Id.* 491, in which it was declared that "the parties in such a status are held to the responsibilities imposed by the federal law, to the exclusion of all other rules of obligation."

In consonance with this declaration of jurisdiction, the identical question presented here has received consideration in *Illinois Central Railroad Co.* v. *Hoopes & Sons,* 233 *Fed. Rep.* 135, where the court, deciding adversely to the counterclaim, declared the obvious purpose of the Elkins act and its amendments to be, in effect, a legislative mandate against rebates and discriminations, in conformity with a public policy which had that purpose as its pronounced object; the effect of which was that in construing the acts of congress "the courts and the interstate commerce commission have uniformly frowned upon every device and subterfuge adopted, which in any manner permitted any discrimination whatsoever between shippers." That adjudication, after referring to the genesis of this legislation, and its manifest purpose, concluded that "so important was it that the collection of freight charges should be uniform as to all shippers; so important is it that it be above suspicion of favoritism that it is against public policy to permit a counter-claim of this kind to be pleaded," and the counter-claim was struck out.

A similar result was reached, and upon the same ground, in *Chicago and North Western Railway Co.* v. *Stein Company,* 233 *Fed. Rep.* 716, and *Johnson-Brown Co.* v. *Delaware, Lackawanna and Western Railroad Co.,* 239 *Id.* 590.

It is urged by the defendant that these determinations, involving a question of statutory construction based upon a question of federal public policy as *ratio decidendi,* should not be followed in the state jurisdiction, if the personal interests of the local suitor should thus be inconvenienced. That argument overlooks the fundamental concept of our constitutional form of government, which concedes to the federal government exclusive jurisdiction, except as permitted by federal legislation to the states, in all matters of interstate commerce. It also assumes that the public policy thus declared may, in its results, run counter to an evolution of state public policy; but it is obvious that as against the clear constitutional right of the general government to legislate there can be recognized no legally independent antagonistic state policy which would in its results be destructive of the fundamental conception of our national policy, based upon the constitutional prerogative.

It also ignores the settled rule of adjudication, that as between the federal and state courts, the determinations of the former, upon the construction of a federal statute, in a cause arising "under the laws of the United States or growing out of the legislation of congress," is conclusive and determinative upon the latter in suits instituted in the state jurisdiction. *Wilcox* v. *Jackson,* 13 *Pet.* (*U. S.*) 498; *Missouri K. & T. R. Co.* v. *Elliott,* 184 *U. S.* 530; *In re Lennon,* 166 *Id.* 548; *Robb* v. *Connolly,* 111 *Id.* 624.

The question *sub judice* therefore resolves itself into one which is to be determined upon the well-settled doctrine of *stare decisis,* which for the reasons given must control here in favor of the motion to strike out, which will be granted, with costs, the plaintiff thereby being relegated to the vindication of his claim in a separate action.