### PAYNE, Director General of Railroads, v. CLARKE.

(District Court, S. D. California, S. D.    March 8, 1921.)

No. 855.

1. **Carriers ⊶35—Misquotation of rate by agent does not affect lawful charge.**
   A misstatement by an agent of a railroad company of the amount of a freight charge on an interstate shipment, and its payment by the shipper, *held* not to relieve him from liability for the lawful rate.

2. **Carriers ⊶30—Publication not essential to lawful rate.**
   A rate filed by a carrier with, and approved by, the Interstate Commerce Commission, constitutes the lawful rate, irrespective of its subsequent publication.

3. **Courts ⊶347—Counterclaim for damage to shipment may be pleaded in action for freight in federal court.**
   In an action to recover a freight charge in a federal court, defendant *held* entitled to assert a counterclaim for damage to the shipment, where such counterclaim is permitted, or required, by the state practice.

At Law.    Action by John Barton Payne, as Agent and Director General of Railroads, against A. B. Clarke.    On demurrer to, and motion to strike, answer.    Demurrer overruled, and motion denied.

Fred E. Pettit, Jr., and E. E. Bennett, both of Los Angeles, Cal., for plaintiff.

Moe M. Fogel, of Los Angeles, Cal., for defendant.

BLEDSOE, District Judge.    Plaintiff, under appropriate authority, sues to recover $111.44 alleged to be due as an unpaid balance on lawful transportation charges on an automobile shipped by defendant from Ida Grove, Iowa, to Portland, Or.    The total charges, "computed in accordance with tariffs, rates and classifications approved by and on file with the Interstate Commerce Commission of the United States and duly published and posted as provided by law," together with required War Tax, amounted to $247.40.

Defendant, answering, admits, either expressly or by failure to deny, all the material allegations of the complaint, save that he denies that the rates and classifications as approved by the Interstate Commerce Commission "were published as required by the act providing for the regulation of common carriers," etc. He also alleges in appropriate language a counterclaim against the plaintiff in the sum of $150. arising out of damage done to the automobile in transit, "caused by the negligence of the plaintiff herein in its method of handling said shipment en route." Defendant also alleges that, according to rates quoted him by agents of plaintiff, he could have shipped said automobile from Sioux City, Iowa, or Omaha, Neb., to Portland, for "approximately $125," but was induced to ship the same from Ida Grove at a cost then stated to him to be the sum of $135.96, which he then paid; that but for the mistake asserted to have been made by plaintiff's agent, etc., he would have shipped the said automobile from either Sioux City or Omaha; and that it is now inequitable, etc., to require him to pay the sum demanded herein, etc.

Plaintiff moves to strike out all the above-mentioned allegations, and also demurs to the answer on the ground that no defense or counterclaim is stated.

[1] The question of the liability of a shipper to pay to the common carrier the exact charge provided for in the approved rates and tariffs, has been given careful consideration by this court in Davis v. Southern Pacific (D. C.) 235 Fed. 731, and In re Independent Sewer Pipe Co. (D. C.) 248 Fed. 547. The Supreme Court of the United States in L. & N. R. R. Co. v. Maxwell, 237 U. S. 94, 97, 35 Sup. Ct. 494, 495 (59 L. Ed. 853, L. R. A. 1915E, 665) in discussing the matter of public policy involved, and holding the shipper liable as for the payment of the exact rate fixed and approved by the Interstate Commerce Commission, said:

"Ignorance or misquotation of rates is not an excuse for paying or charging either less, or more than the rate filed. This rule is undeniably strict and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discriminations."

The same authority in K. C. S. Ry. v. Carl, 227 U. S. 639, 653, 33 Sup. Ct. 391, 395 (57 L. Ed. 683), held:

"Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed."

[2] Assuming, as the court must do, the correctness of plaintiff's allegation that the full amount of the true rate for the service rendered has not been paid, plaintiff will be entitled to recover, even if such rate were not published as required by the act, or if plaintiff's agent gave to defendant an erroneous rate. In other words, the fixing of a rate, followed by the filing of the same with, and the approval of, the Interstate Commerce Commission, constitutes the lawful and binding rate to be paid, irrespective of any question of publication thereafter.

[3] The main argument in the case centers about the right of defendant to assert herein his counterclaim for damage done to the property in transit. In this behalf, plaintiff's contention is that under the decisions in Illinois Central Ry. v. Hoopes (D. C.) 233 Fed. 135, C. & N. W. v. Stein (D. C.) 233 Fed. 716, Johnson-Brown v. D., L. & W. R. R. (D. C.) 239 Fed. 590, and D., L. & W. R. R. v. Nuhs, 93 N. J. Law, 309, 111 Atl. 223, a counterclaim for damage done to the goods in transit may not be interposed as a defense or set off to a claim for unpaid carriage charges. The reason for the holding made is stated by the District Court of Nebraska in the Stein Case, and is followed by the three other cases cited. It is to the effect that, maintaining inviolate the public policy hereinabove mentioned, to permit the counterclaim to be pleaded would be to prevent "the usual right to make compromise" with respect to damage claims against railroads, and cause the court to "undertake the impossible task of holding the carrier to diligence and good faith in preparing and presenting its defenses, in order to prevent the granting and receiving of rebates by insidious agreement between parties with reference to the disposition of the suit."

Upon careful consideration of the subject-matter, however, I am more attracted by the reasoning indulged in by the courts in Wells-Fargo Co. v. Cuneo (D. C.) 241 Fed. 727, and C. & N. W. v. Teckton-ius (D. C.) 262 Fed. 715, to the general intent that, if there be a disposition to work a discrimination and secure a rebate through the consummation of a fraudulent compromise of a suit for damages to goods in transit, the same may be effected with equal ease in a separate suit as in the suit for the recovery of unpaid carriage charges. In other words, if the parties are intending to arrange for a rebate from the established tariff through the medium of the compromise and settlement of a fraudulent claim for damages, they can do this as well in one suit as in another, and as a matter of fact the possibilities of fraud would be greater if the parties were remitted to an independent forum for the consideration of the mere damage claim. There, in the absence of some circumstance involving it, the court would have no concern with the bona fides of the claim. When pressed as a counterclaim to a suit for unpaid carriage charges, however, in order that the public policy involved might be best maintained, the trial court would be unusually astute to see that every item of damage claimed was bottomed upon persuasive proof.

In my judgment the mere possibility of compromise and settlement works toward a negation of the principle of public policy involved. It admits of a payment by the carrier, as for damages, upon a fraudulent claim, of a part of the moneys theretofore received in satisfaction of the carriage charges lawfully due. Whenever and under whatever guise that fraud is perpetrated, the principle striven for in the cases relied on by plaintiff is completely set at naught.

The courts must presume in advance that the parties will act in good faith in whatever form the litigation may come before the court for consideration, and it must also be presumed that no counterclaim

for damages will or can be allowed, except in the event of due proof of the same being made to the court, and the court passing affirmatively upon it. The pleading of the counterclaim herein is in accordance with the established practice in California, section 438, Code of Civil Procedure, and as a matter of fact, if defendant has a claim and does not plead it herein, there is grave doubt if under California practice he would not be denied the opportunity of asserting it hereafter in any form. California Code of Civil Procedure, § 439.

Finally, commendable economy and efficiency in judicial procedure would seem to justify the disposition of the entire related controversy in the one action. If the theory of the plaintiff were correct, upon an agreement to pay the entire freight charges in advance and a payment through mistake or otherwise of only a portion thereof, plaintiff would be entitled to recover the full amount of the asserted unpaid freight charges, even though there should have been a complete failure to deliver the merchandise carried. If defendant by way of defense in the same suit could not show a partial damage to the article carried, he could not show its entire loss. The difference is one of degree only.

The motion to strike, being a single motion directed to all of the averments in the answer, is denied, and the demurrer is overruled.