**Michigan Central Railroad Company, Appellee, v. Edward P. McKenna and Luther S. Dickey, Jr., trading as McKenna and Dickey, Appellants.**

**Gen. No. 29,188.**

1. CARRIERS—*when defense to claim for demurrage is within jurisdiction of Interstate Commerce Commission.* In an action by an interstate carrier for demurrage charges, a defense that the demurrage charges had not accrued because plaintiff had failed to furnish empty cars for outbound shipments from defendants' elevator, thereby making it impossible for defendants to unload the inbound cars in time, was properly stricken from the files as involving a matter within the jurisdiction of the Interstate Commerce Commission.

2. CARRIERS—*jurisdiction as between State court and Interstate Commerce Commission.* A defense interposed in an action by an interstate carrier for demurrage charges that, if the charges had accrued, defendants had been damaged in a like amount by plaintiff's failure to furnish empty cars for outbound shipments from defendants' elevator so as to make room for inbound shipments did not involve a matter within the exclusive jurisdiction of the Interstate Commerce Commission and such defense and an affidavit of claim for set-off based thereon were improperly stricken on that ground.

Appeal by defendants from the Municipal Court of Chicago; the Hon. J. FRED GILSTER, Judge, presiding. Heard in the third division of this court for the first district at the March term, 1924. Reversed and remanded. Opinion filed April 29, 1925.

JEFFERY, CAMPBELL & CLARK, for appellants; JAMES CLARKE JEFFERY and STEPHEN A. CROSS, of counsel.

WINSTON, STRAWN & SHAW, for appellee; SILAS H. STRAWN and FRANK H. TOWNER, of counsel.

MR. JUSTICE THOMSON delivered the opinion of the court.

By this appeal the defendants, McKenna and Dickey, seek to reverse a judgment for $1,483.79, recovered against them by the plaintiff company, in the municipal court of Chicago. The defendants maintained a grain elevator in the Chicago district. The plaintiff Railroad Company brought this action to recover certain demurrage charges which had accrued on shipments consigned to this elevator. To the statement of claim of the plaintiff, the defendants filed an affidavit of merits consisting of five paragraphs, as follows: (1) defendants denied that the demurrage charges had lawfully accrued as alleged by the plaintiff; (2) defendants alleged that the demurrage charges sued for had not accrued to the plaintiff under its lawfully published tariffs because the acts of the plaintiff itself in failing to furnish the defendants cars for outbound shipments from their elevator made it impossible for them to unload the inbound cars on which the plaintiff claimed the demurrage charges had accrued; (3) defendants denied that the demurrage or any part thereof had accrued and alleged that plaintiff's cause of action arose entirely because of its violation of the duty imposed on it by section 1 of the act to regulate commerce, providing that it shall be the duty of the plaintiff to furnish

the defendants cars upon reasonable demand and that defendants were unable to unload its inbound cars of grain on which the demurrage sued for was claimed, by reason of plaintiff's failure to furnish cars after reasonable requests made by defendants, in due time to enable them to make outbound shipments from their elevator; (4) defendants alleged that if demurrage had accrued in the amount claimed, or any other amount, the defendants had been damaged in the same amount through plaintiff's failure to furnish cars, in violation of the duty imposed on it by law, in which to load grain bound out from defendants' elevator; that by reason of such failure on plaintiff's part, defendants' elevator became so congested with grain that they were unable to make room therein for the unloading of the inbound cars; (5) defendants alleged that during all the time referred to in the plaintiff's statement of claim, it had agreed to furnish switching service to the defendants, as the law requires it to, the defendants' elevator being on the right of way and switching tracks of the plaintiff, but in violation of its duty and agreement, the plaintiff had failed to furnish such switching services so that cars were caused to remain on the sidetracks when defendants were ready and anxious to unload them, but could not do so because of plaintiff's failure to furnish switching services, and defendants alleged that demurrage could not lawfully accrue when they were willing to unload the cars but were prevented from doing so for lack of switching service as alleged.

On motion of the plaintiff, the trial court struck from the files paragraphs two, three and four of the affidavit of merits.

The defendants also filed an affidavit of claim for set-off alleging that they had ordered cars to be delivered to their elevator by the plaintiff Railroad Company, in which to reship its outbound grain; that the plaintiff had agreed to furnish said cars and was

578     APPELLATE COURTS OF ILLINOIS.

Michigan Cent. R. Co. v. McKenna et al., 236 Ill. App. 575.

required by law so to do and the defendants relied
on plaintiff's promise to furnish the cars and caused
grain to be shipped in to their elevator; that the
plaintiff knew when these empty cars were ordered
that grain was coming in over the railroad to be un-
loaded into the elevator when the empty cars had
been loaded and the outbound grain thus removed
from the elevator; and defendants alleged that con-
trary to its duty and in violation of its promise, the
plaintiff refused to furnish empty cars or to permit
defendants to use cars unloaded at the elevator in
shipping outbound grain, but took said empty cars
away as they were unloaded and that, by reason of
this, the defendants were damaged, inasmuch as they
were unable to unload the incoming cars within the
free time allowed by the plaintiff's tariffs and a large
amount of demurrage accrued, wholly because of
plaintiff's failure and refusal to furnish defendants
with the empty cars in which to make their outbound
shipments. The defendants further alleged that their
elevator was of sufficient capacity to accommodate all
the inbound shipments on which the demurrage sued
for had accrued, and that if the defendants had been
furnished the empty cars needed for the outbound
shipments, as promised, all the inbound cars could
and would have been unloaded within the free time
allowed and no demurrage would have accrued, where-
fore defendants alleged they had been damaged to
the amount of the demurrage charges claimed by the
plaintiff and asked judgment against the plaintiff
for that amount.

On plaintiff's motion the trial court struck from
the files the defendants' affidavit of claim for set-off.
The cause later came on for hearing and the plaintiff
proved that demurrage charges had accrued against
the defendants in the amount of $1,483.79. The de-
fendants offered to prove the substance of the matters
which had been alleged by them in the paragraphs

of their affidavit of merits which had been stricken and of their affidavit of claim for set-off, to all of which plaintiff objected and these objections were sustained. Judgment was then entered for the plaintiff, as already recited, and this appeal followed.

In support of the action of the trial court, the plaintiff contends that a set-off or counterclaim may not properly be interposed in a case wherein a carrier seeks to recover transportation or demurrage charges which have accrued under tariffs which have been published and are in force under the provisions of the act to regulate interstate commerce, citing *Illinois Cent. R. Co. v. W. L. Hoopes & Sons,* 233 Fed. 135; *Chicago & N. W. Ry. Co. v. Wm. S. Stein Co.,* 233 Fed. 716; *Johnson-Brown Co. v. Delaware, L. & W. R. Co.,* 239 Fed. 590; and *Delaware, L. & W. R. Co. v. Henry Nuhs Co.,* 83 N. J. L. 309, 111 Atl. 223. The defendants contend the contrary, citing, among other cases: *Wells Fargo & Co. v. Cuneo,* 241 Fed. 727; *Chicago & N. W. Ry. Co. v. E. C. Tecktonius Mfg. Co.,* 262 Fed. 715; and *Payne v. Clarke,* 271 Fed. 525. It will be noted that the latter cases were all decided after those relied upon by the plaintiff. These later cases all refer to the former ones, cited here by the plaintiff, and expressly depart from those earlier decisions.

The *Wells Fargo* case (241 Fed. 727) was an action by an express company to recover express charges on a given shipment. The defendant sought to interpose a counterclaim alleging that the goods shipped had been damaged while in the possession of the express company through its negligence. A demurrer was interposed to the counterclaim "on the ground that, in an action by an interstate carrier to recover its charges, a defendant cannot counterclaim for damages to the shipment, because the Interstate Commerce Act requires the carrier to collect its lawful charges and to accept only money in pay-

ment." In overruling the demurrer the court held that it could not be denied that the defendant had the right to begin an independent action to recover damages to the shipment; that it might well be that the parties could not compromise the matter out of court, in view of the requirement of the Interstate Commerce Act; but that when the litigants brought their respective claims into court, it must be assumed that they were submitting a real controversy for determination, not by themselves, but by the court,—a tribunal created and organized for that purpose; that the provisions of the act referred to were not intended to deprive a shipper of his lawful remedies against the carrier for such breaches of duty or wrongful acts as the carrier may have committed; that the policy of the law was to settle germane disputes in one litigation; and that when the carrier has found the shipper in one jurisdiction and sued him there, it would be most unjust to force the shipper to go to another jurisdiction to assert his rights and claims in an independent action or where both parties are in the same jurisdiction it would be "the height of absurdity" to require two actions to be brought where the controversy could be disposed of in one. The court pointed out that "obviously, if the parties intended to evade the statute by an unlawful compromise, they could do it as easily by the medium of two lawsuits as they could in one." The other cases relied upon by the defendants are to the same effect.

We realize that in some respects the issues involved in the case at bar are somewhat different from the issues presented in the cases cited, in that here the defendants are complaining about the failure of the plaintiff carrier to fulfill its duty and carry out its promise to supply cars for outbound shipments and that this is a matter entirely separate and apart from the carrier's assessment of demurrage charges, or, as the plaintiff puts it in its brief, there is no obligation

on its part to furnish empty cars, so far as the demurrage sued for is concerned. This may, in one sense, be true. The failure of the carrier to furnish empty cars to take care of outbound shipments in a situation such as the one involved here will not prevent demurrage charges accruing on cars involved in the inbound shipments which are held on the tracks beyond the free time allowed. But it does not follow that where the shipper is damaged because of the failure of the carrier to furnish cars for outbound shipments, for which failure the carrier is liable (*Eastern Ry. Co. of New Mexico v. Littlefield*, 237 U. S. 140), the shipper may not interpose that fact by way of defense or as a counterclaim for that damage, in the suit brought by the carrier to recover the demurrage charges.

We do not consider that in interposing such defense or counterclaim, the defendants (as plaintiff contends) are asking the court to pass upon the demurrage tariff and decide whether or not, under that tariff, the plaintiff's failure to furnish cars for outbound shipments was a railroad error which prevented the accrual of the demurrage. That proposition may be considered as involved in the question of the propriety of the action of the trial court in striking paragraphs two and three of the defendants' affidavit of merits and to that extent we hold that the action of the trial court was warranted. But we do not consider that such proposition is involved in the consideration of the action of the trial court in striking paragraph four of the affidavit of merits or in striking the affidavit of claim for set-off and, in so doing, we are of the opinion the trial court erred.

The question of whether the defendants had been damaged, as alleged by them, by reason of the failure of the plaintiff to furnish them the cars requested for outbound shipments is not a matter within the exclusive jurisdiction of the Interstate Commerce

Commission. The duty of furnishing cars for the transportation of goods is imposed upon carriers not only by section 1 of the act to regulate interstate commerce but by the statutes of our own State as well. (Cahill's St., ch. 114, ¶ 100.) This provision has been held, both by our Supreme Court and by the United States Supreme Court, not to be in conflict with the federal constitution, nor in violation of the commerce clause of the federal statutes. *Mulberry Hill Coal Co. v. Illinois Cent. R. Co.*, 257 Ill. 80; *Illinois Cent. R. Co. v. Mulberry Hill Coal Co.*, 238 U. S. 275. The question of whether the defendants have been damaged by the failure of the plaintiff to furnish cars for outbound shipments does not, on the record presented here, involve the question of whether such failure has been caused by a failure of the plaintiff carrier to establish and enforce reasonable rules with respect to car service as required by the act to regulate interstate commerce which the plaintiff contends is a question for the Interstate Commerce Commission and not for the courts. The plaintiff did not plead any excuse for its failure to furnish empty cars for outbound shipments, as required by law and as defendants allege it promised to do. The issue presented by the fourth paragraph of the defendants' affidavit of merits and by its affidavit of claim for set-off, and the plaintiff's motion to strike, involves a failure on the part of the plaintiff to fulfill the duty imposed on it by law, to furnish cars and fulfill its promises in that regard, without any excuse being offered for its failure. That does not present an administrative question within the jurisdiction of the Interstate Commerce Commission but one which the courts may determine. Section 22 of the act to regulate commerce provides that ''Nothing in the Act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies.''

In the case of *Grand Trunk Western Ry. Co. v. McKenna,* 234 Ill. App. 581, the shipper had invoked the jurisdiction of the Interstate Commerce Commission, asking for "reparation" of the demurrage charges or a "waiver" thereof, and the commission had decided the issues thus presented to it, against the shipper, and thereafter the shipper had, in effect, invoked the aid of the courts in seeking to avoid payment of the demurrage charges. In our opinion in that case we pointed out that the Interstate Commerce Act provides that "if any carrier does anything prohibited by the act or omits to do anything required by the act, such carrier shall be liable to anyone injured thereby, for the full amount of damages sustained in consequence of such violation of the provisions of the act. It is further provided that anyone so claiming to be damaged, may either make complaint to the commission as provided in the act, or bring suit for damages in any district or circuit court of the United States of competent jurisdiction, but that both such remedies may not be pursued, but such person must elect which of the two methods of procedure will be pursued." We then called attention to the provisions of section 22 of the act quoted above and said: "But the provisions of the act last referred to cannot be taken to mean that a shipper claiming to have been damaged by a failure to furnish cars by the carrier or to furnish appropriate transportation service, may successively submit the matter to the commission and to the courts. When the defendants themselves invoked the jurisdiction of the commission, seeking to be relieved from the payment of the demurrage charges here sued for, they thereby elected to pursue the remedy afforded by the act, before the commission, which, under the act, had full jurisdiction to determine whether the plaintiff carrier had defaulted in any degree in the performance of its duties toward the defendants, and if so, whether the defend-

ants had been damaged thereby and to what extent. The decision of the commission having been to the effect that the carrier had not defaulted in its obligations to these defendants, they are bound thereby and may not now litigate the same subject matter in this action.'' No such situation is presented in the case at bar. So far as this record shows, these defendants have never invoked the jurisdiction of the commission, with regard to the matters presented by this record. The case at bar further differs from the case referred to in this: in that case it appeared from the face of the pleadings, as shown by the record, that in connection with the proceedings which had previously been instituted by the shipper there involved, before the Interstate Commerce Commission, a decision had been rendered by the commission to the effect that the failure of the carrier to furnish empty cars for the loading of outbound grain, which was there complained of, was occasioned by conditions resulting from the World War and beyond the control of the carrier, and therefore that the failure was excusable and the carrier was not liable for any damages the shipper might have suffered by reason of the failure. No situation of that kind is presented by the record in the case at bar. On this record the question presented is, whether the carrier may be liable in damages to the shipper for its failure to furnish equipment for grain shipments from the shipper's elevator, as required by law and as it agreed to, without any excuse being offered for such failure, and, if so, whether the shipper may be permitted to prove such damages in defeat of or as a counterclaim to the carrier's claim for demurrage charges which have accrued on grain shipments into such elevator.

In the case at bar, the plaintiff carrier, in contending that this may not be done, invokes the decision of the Interstate Commerce Commission, rendered in connection with the proceedings instituted by the

shippers who were involved in the former decision by this court, to which reference has been made. The decision of the commission is reported in 57 I. C. C. Rep. 398. In that decision, the commission, in addition to finding that the facts there presented were such as to excuse the delay of the carrier in furnishing the equipment for outbound shipments and that therefore the carrier was not liable for any damages caused the shippers by such delay, did proceed to hold further that the matter of furnishing cars for outbound shipments was "a separate transaction" from the matter of the assessing of demurrage on inbound shipments, and that to allow the latter "to depend upon" the former "would open the way to abuses not necessary in order to protect a shipper from unlawful acts of the carrier." That was merely holding that demurrage would necessarily accrue under the published demurrage tariffs of the carrier, notwithstanding the fact that the latter may have defaulted in furnishing cars for outbound shipments. But that cannot be taken to mean that if the carrier sues the shipper in the courts to recover the demurrage charges, which admittedly have accrued on inbound shipments and which have been legally assessed on such shipments, the shipper will be deprived of his legal right to set-off, against the carrier's claim, such damage as the shipper may prove it has suffered because of the carrier's failure to fulfill its duty and agreement in the other though separate transaction involving the furnishing of equipment for the outbound shipments, no excuse being offered for such failure. In our opinion, nothing said by the commission in the decision referred to, or by this court in the opinion handed down in the former case, supports the contentions of the plaintiff in the case at bar.

In view of the decision of the Interstate Commerce Commission in 57 I. C. C. Rep. 398, the defendants

586    APPELLATE COURTS OF ILLINOIS.

Michigan Cent. R. Co. v. McKenna et al., 236 Ill. App. 575.

in the case at bar could not successfully contend that the demurrage charges sued for had in fact not accrued or had not been legally assessed. But nothing in that decision took away from the defendants their legal right to damages caused by the failure of the plaintiff carrier to furnish them cars or prevent them from setting up such claim by way of defense or set-off in an action in the courts by the plaintiff carrier, to recover such demurrage charges.

In *Louisville & N. R. Co. v. A. Waller & Co.*, 154 Ky. 811, a carrier sued a shipper to recover accrued demurrage charges and the shipper was permitted to set up, by way of counterclaim, its claim for damages caused by failure of the carrier to furnish sufficient cars to take care of the shipper's outbound shipments, which occasioned the delay in the unloading of the cars on which the demurrage had accrued. While the plaintiff in that case sued for demurrage charges which were not based on a public tariff charge, we consider the case in point in the case at bar. Our attention has not been called to any provision of the Interstate Commerce Act which may be considered as having the effect of abridging or altering the legal right of a shipper to interpose such a defense or counterclaim in an action brought by a carrier to recover demurrage charges, even though the latter be based on public tariff charges provided for under the act.

For the reasons stated the judgment of the municipal court is reversed and the cause is remanded to that court for further proceedings not inconsistent herewith.

*Judgment reversed and cause remanded.*

O'CONNOR, P. J., and TAYLOR, J., concur.