## PENNSYLVANIA R. CO. v. SOUTH CAROLINA PRODUCE ASS'N.

District Court, E. D. South Carolina.   April 10, 1928.

Carriers ⊜⟝32(2)—Counterclaim for damage to goods cannot be set up in defense to action by carrier for freight charges on interstate shipments (Interstate Commerce Act, § 6[7], as amended [49 USCA § 6(7)]).

Under Interstate Commerce Act, § 6 (7), as amended (49 USCA § 6[7]; Comp. St. § 8569[7]), in an action by a railroad company to recover freight charges on interstate shipments, defendant cannot set up in defense a counterclaim for damage to goods in shipment.

At Law. Action by the Pennsylvania Railroad Company against the South Carolina Produce Association. On demurrer to counterclaim in answer. Demurrer sustained.

N. B. Barnwell, of Charleston, S. C., for plaintiff.

John I. Cosgrove, of Charleston, S. C., for defendant.

ERNEST F. COCHRAN, District Judge. The plaintiff brought this action to recover from the defendant certain freight charges for the transportation of certain interstate shipments. The defendant's answer sets forth a counterclaim for damages for negligence in the transportation of those shipments. The plaintiff has demurred to the counterclaim, on the ground that the claim for damages cannot, under the Interstate Commerce Act of Congress and the acts amendatory thereto (49 USCA § 1 et seq. Comp. St. § 8563 et seq.), constitute a lawful offset or counterclaim to a cause of action for unpaid transportation charges.

The plaintiff concedes that the counterclaim, so far as the procedure is concerned, is one which could be maintained under the Code of Civil Procedure of South Carolina of 1922. Section 411, vol. 1. The plaintiff's contention is a deeper one than a mere question of practice or procedure. It is insisted that such a counterclaim cannot be asserted in this character of action, but must be sued

upon separately as a distinct and independent action, because of the public policy inherent in the Interstate Commerce Act of Congress and the acts amendatory thereto.

There is no decision directly in point by the Supreme Court of the United States, nor by any of the Circuit Courts of Appeals, and the decisions of the District Courts and of the state courts are in hopeless conflict. The following cases hold that the counterclaim may be lawfully interposed: Wells-Fargo & Co. v. Cuneo (D. C.) 241 F. 727; Chicago & N. W. R. R. Co. v. Tecktonius Mfg. Co. (D. C.) 262 F. 715; Payne v. Clarke (D. C.) 271 F. 525; Battle v. Atkinson, 9 Ga. App. 488, 71 S. E. 775; Central, etc., v. Birmingham, etc., 9 Ala. App. 419, 64 So. 202; Nashville, etc., v. Tennessee Mill Co., 143 Tenn. 237, 227 S. W. 443; Penn. R. R. Co. v. Bellinger, 101 Misc. Rep. 105, 166 N. Y. S. 652·; N. Y. Central R. Co. v. Federal Sugar Refining Co., 201 App. Div. 467, 194 N. Y. S. 467.

The following cases hold that such a counterclaim cannot be interposed in an action of this character: I. C. R. Co. v. Hoopes (D. C.) 233 F. 135; C. & N. W. R. Co. v. Stein (D. C.) 233 F. 716; Johnson-Brown Co. v. Railroad (D. C.) 239 F. 590; Oregon-Washington Railroad & Nav. Co. v. Cascade Contract Co., 101 Or. 582, 197 P. 1085, 1088, 200 P. 1034; D., L. & W. R. R. v. Nuhs, 93 N. J. Law, 309, 111 A. 223; Adams Express Co. v. Albright Bros., 75 Pa. Super. Ct. 410; N. Y. S. W. R. R. Co. v. Ruthven, 88 Pa. Super. Ct. 510.

The only case in this circuit is the case of Lake & Export Coal Corporation v. Chesapeake & Ohio Ry. Co., 1 F.(2d) 969. In that case, the Circuit Court of Appeals said that a railroad company was without legal authority to make an agreement to purchase coal and pay for the same by releasing a claim for freight and demurrage, and the case of Illinois Central R. R. Co. v. Hoopes, supra, was cited. But in that case the court held that there was no evidence from which the jury would have been justified in finding that there was such an agreement, and that it was unnecessary to go into nice discussion as to whether the railroad could legally have made such a bargain as was claimed. The case, therefore, can hardly be regarded as authority upon the present proposition, though the reference to the Hoopes Case is an indication that the court considered that case as stating sound law.

While it is a hopeless task to attempt to reconcile the decisions, or to say just where the weight of authority lies, and there is no Supreme Court decision directly in point,

nevertheless I am of opinion that the principles laid down by the Supreme Court furnish a sufficient and logical guide by which we may reach a correct solution of the question. The pertinent part of the act of Congress upon which plaintiff bases its contention is found in section 6 of the Interstate Commerce Act of February 4, 1887, as amended by subsequent acts (U. S. Code, tit. 49, § 6, par. 7 [49 USCA § 6 (7); Comp. St. § 8569 (7)]), and is as follows: " * * * Nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

Construing this act, the Supreme Court, in the case of Louisville & Nashville R. R. Co. v. Mottley, held that a railroad company could lawfully receive money only for transportation charges, and could not issue passes pursuant to an agreement whereby the passes were to be issued in settlement of a claim for damages, even though the agreement was made before the Interstate Commerce Act was passed. Louisville & Nashville R. R. Co. v. Mottley, 219 U. S. 467, 31 S. Ct. 265, 55 L. Ed. 297, 34 L. R. A. (N. S.) 671.

In Chicago, etc., Ry. Co. v. U. S., the court held that a contract between a railway company and a newspaper, whereby advertising space was purchased and to be paid for in transportation, was repugnant to the acts of Congress regulating commerce, even though the money value of the transportation was equal to the money value of the advertising space furnished, and that the railroad company was not authorized to accept as compensation anything but money for its transportation charges. In this case the court said: "The legislative department intended that all who obtained transportation on interstate lines should be treated alike in the matter of rates, and that all who availed themselves of the services of the railway company (with certain specified exceptions) should be on a plane of equality. Those ends cannot be met otherwise than by requiring transportation to be paid for in money which has a certain value known to all and not in commodities or services or *otherwise*

*than in money."* (Italics mine.) Chicago, etc., v. U. S., 219 U. S. 486, 496, 31 S. Ct. 272, 274 (55 L. Ed. 305).

In New York Central R. Co. v. Gray, Gray had made a map for the railroad company and was to be paid partly in cash and partly in transportation. It was held that Gray was entitled to the purchase price of the map in money from the railroad, but that it was not permitted to furnish it to him in transportation. In short, he would have to buy tickets, and it would have to pay him what it owed him in cash, and not in passes. N. Y. Central R. Co. v. Gray, 239 U. S. 583, 36 S. Ct. 176, 60 L. Ed. 451.

In Louisville & Nashville Ry. Co. v. Maxwell, the Supreme Court held that the act must be strictly complied with, and that ignorance or misquotation of rates was no excuse for paying or charging either less or more than the rate filed, and while the rule was undeniably strict, and obviously might work hardship in some cases, it embodied the policy which had been adopted by Congress in the regulation of interstate commerce, in order to prevent unjust discrimination, and that cases of individual hardship or inconvenience must give way to the broader and settled policy of preventing discrimination. Louisville & Nashville Ry. Co. v. Maxwell, 237 U. S. 94, 35 S. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665.

The policy of the act of Congress in question is, as has been stated by the Supreme Court, to prevent discrimination, and to cut up, root and branch, the practice of discriminating by means of rebates and allowances of claims for damages. It is clear, under these decisions, that in order to effect that purpose a railroad company is bound to collect its freight charges in money only, and cannot lawfully, in collecting such charges, allow a claim for damages as a set-off. If a railroad accepts in payment of these charges, either in whole or in part, a release of a claim for damages, it certainly, under the decisions of the Supreme Court, has not collected its charges in money only, and this is especially true where the claim is for unliquidated damages as in the case at bar. The two transactions must be treated absolutely as independent and separate transactions, in order to effectuate the purpose of the act. To allow the railroad company to offset these claims for damages would be opening the door to the very practices which it was the intention of Congress to prevent.

This much, it seems to me, is clear and settled. Now, can the parties, by setting up the claim for damages as a counterclaim in a suit brought to collect the charges, do in court what they would have no lawful right to do out of court? It seems to me that the answer must be in the negative. There would be the same opportunity to evade the act in the one case as in the other, unless the courts should undertake in every case of that sort to supervise the transaction, and ascertain whether or not there was any purpose to evade the act. This is a burden which I do not think the courts should assume, nor do I think that Congress intended that they should assume it. The parties have no more right to do in court, and under the supervision of the court, what they could not by agreement do outside of court. The act of Congress was intended to be all-embracing, and to remove every opportunity, as far as possible, on the part of the railroad to allow these claims to be offset.

No one is deprived of any right by this construction of the statute. The railroad company is still at liberty in these cases to collect its freight. It is also at liberty, provided it treats the transaction separately and apart from any question of the freight charges, to agree with the shipper for a settlement of the claim for damages. So, likewise, the railroad company has the right to bring its suit for the recovery of its freight charges, and the shipper may bring his separate independent suit for damages. But any effort to connect the two transactions, and make the settlement of one in any way dependent upon the other, is contrary to the purpose of the act. This may seem to be a harsh rule, perhaps a technical one, and at times to work inconvenience and hardship. But these matters, as I have said, must give way to the broader and greater purpose of Congress to prevent the greater evils of rebates and discrimination.

I am constrained, therefore, to hold that the counterclaim cannot be interposed in this case, but relief must be sought by a separate, independent action, and an appropriate order sustaining the demurrer will be duly entered.