**UNITED STATES of America**

**v.**

**The PENNSYLVANIA RAILROAD COMPANY.**

**Civ. A. No. 39697.**

United States District Court
E. D. Pennsylvania.

Oct. 13, 1969.

Louis Bechtle, U. S. Atty., and Daniel M. O'Donoghue, Asst. Chief, Rail Section, I.C.C., Washington, D. C., for plaintiff.

William F. Zinger, Philadelphia, Pa., for defendant.

## OPINION

HANNUM, District Judge.

This is the United States' Motion for Summary Judgment in a civil action brought to recover forfeitures based upon the violation of the Interstate Commerce Commission's Order Ex Parte 73. The order was authorized by Section 3(2) of the Interstate Commerce Act, 49 U.S.C.,[1] which prohibits delivery of any shipment of freight by a carrier until all freight charges have been paid, except under such regulations as the Commission may prescribe.

The order of the Commission in Ex Parte No. 73 permits carriers to extend credit on carload shipments up to a maximum 120 hours.[2] The violations charged are all extensions of credit in excess of that limit.

Section 16(8) of the Interstate Commerce Act provides for forfeiture by the carrier to the United States of $5,000.00 for each offense in which the carrier knowingly fails or neglects to obey any order made under the provisions of Section 3.[3]

---

[1]. 49 U.S.C. § 3(2) provides in material part:

"No carrier by railroad * * * shall deliver or relinquish possession at destination of any freight * * * transported by it until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges and to prevent unjust discrimination * * *."

This subsection was added by the Transportation Act of 1920, Ch. 91, 41 Stat. 456, which terminated federal control of the railroads after World War I. During federal control, General Order No. 25 (See 57 I.C.C. 593) required that payment of transportation charges be on a cash basis.

2. In 1920, after public hearings, the Commission adopted Ex Parte Order No. 73, 57 I.C.C. 596 A, which has been amended twice, 171 I.C.C. 268 and 310 I.C.C. 391. Under the Order in Ex Parte 73, as amended, a carrier was permitted (but not required) to extend credit up to a maximum of 120 hours after delivery of the freight. However, in extending credit, the carrier was required to take precautions deemed by it to be sufficient to insure payment of the charges within the prescribed time limit. This amendment was codified in the Code of Federal Regulations, 49 C.F.R. § 1320.3.

3. 49 U.S.C. § 16(8) provides in material part as follows:

"Any carrier * * * who knowingly fails or neglects to obey any order under the provisions of Sections 3, 13 or 15 of this Title shall forfeit to the United States the sum of $5,000.00 for each offense. Every distinct violation shall be deemed a separate offense, and in the case of a continuing violation each day shall be deemed a separate offense."

■ The defendant challenges this whole proceeding on the ground that, although in form a civil action, it is in reality a criminal prosecution and that its enforcement by summary judgment would deny to the accused the Constitutional guarantees of the Fifth Amendment.

Whether a sanction is civil or criminal is a question of statutory construction. United States v. Norfolk, Baltimore and Carolina Line, Inc., 382 F.2d 208 (4th Cir. 1967).

The main reason urged by the defendant in support of this position is that the terminology used in Section 16(8) of the statute is penal in nature. However, Section 16(9) of the Interstate Commerce Act, 49 U.S.C. § 16(9) refers to the $5,000.00 forfeiture and provides that such shall be recoverable in a *civil* suit. It is equally within the power of Congress to impose both a criminal and a civil sanction with respect to the same act or omission. A forfeiture of goods or their value and the payment of fixed or variable sums of money are sanctions which have been recogized as enforcible by civil proceedings. See United States v. Western Pacific Railroad Company, and United States v. Denver & Rio Grande Western Railroad Company, 385 F.2d 161 (10th Cir. 1967), cert. denied, sub nom. Denver & Rio Grande Western Railroad Company v. United States, 391 U.S. 919, 88 S.Ct. 1805, 20 L.Ed.2d 656 (1968); Helvering v. Mitchell, 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1937); United States v. Regan, 232 U.S. 37, 34 S.Ct. 213, 58 L.Ed. 494 (1914).

Count 1 of the Complaint charges, in paragraph 4, that the defendant, during the period of June 1962, through December 1963, frequently and knowingly engaged in the practice of extending credit in excess of 120 hours for tariff charges applicable to interstate carload shipments of freight to certain shippers, namely, Murphy Plywood Corporation and Morris Fishman and Sons, Inc.

Despite defendant's denials of the conclusionary allegations, defendant admits the correctness and accuracy of certain copies of the Railroad Company's books of account which disclose that defendant, on numerous occasions, delivered freight to Murphy Plywood Corporation and to Morris Fishman and Sons, Inc. without collecting the freight charges thereon, and that such freight charges stood unpaid in excess of 120 hours.[4] It is undisputed that no action was taken by the defendant to cancel the credit of the two delinquent shippers.

■ Defendant attempts to explain its failure to collect freight charges from Murphy Plywood Corporation within the 120 hour credit period because of an offsetting claim by this shipper for damages to the shipment. While it is true that when suit has been brought by the carrier or the shipper, claims for damage may be set off or the subject of a counter-claim in accordance with the law of the forum, a shipper may not deduct the amount of claimed damage from freight charges owed to the carrier, nor may the carrier set off debts owed by that carrier to a shipper against debt accruing from freight charges owed by the shipper to the carrier. Chicago & North Western Railway Company v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670 (1930).

■ Section 16(8) of the Statute provides a penalty for "knowingly" failing or neglecting to obey an order of the Commission. The order which plaintiff alleges was disobeyed, Ex Parte No. 73, as amended, authorizes the carrier to extend credit up to 120 hours. The defendant contends that the plaintiff has failed to present sufficient evidence to establish a knowing violation. It would seem, however, that the offense charged in extending credit is one which can only

---

The same legislation that added Section 3(2), amended Section 16(8) so as to include Section 3 within its terms.

4. See defendant's answer to plaintiff's request for admissions of facts numbered 3(a), 3(b), 3(c), 3(u) and 3(v).

be committed knowingly. The very concept of extending credit imparts a voluntary act involving an exercise of free will. Also, while the Complaint does claim damage for only three specific violations, paragraph 4 of Count 1 sets forth a course of conduct to show the frequency of the offenses and the failure of the carrier to take effective precautions as required by the Commission's credit order. This allegation is corroborated by the defendant's own records, admittedly accurate, which disclose ample evidence of knowledge of such violations. These records also show that at the very time credit was extended on each of the three occasions specified in the Complaint, the two shippers in question were delinquent in payment of other credit charges. These facts taken together are sufficient to establish that the defendant's failure to obey the order of the Commission was done knowingly. See Riss & Co. v. United States, 262 F.2d 245 (8th Cir. 1958).[5]

■ The final point upon which the court must focus attention involves the defendant's contention that the Government must establish proof of unjust discrimination before defendant may be considered in violation of the Commission's order.

In support of this contention the defendant relies upon Continental Shippers Association v. United States, 328 F.2d 966 (9th Cir. 1964) which was a criminal prosecution charging a violation of the Elkins Act, 49 U.S.C. § 41(1) (1959). However, in Continental, supra, the ac-

tion was against a non-paying shipper rather than against a non-collecting carrier. In that case the court was faced with a factual situation in which once a delay existed in payment of tariff charges by the shipper, the carrier had taken prompt collection measures, suspending credit privileges on future shipments by the shipper in an attempt to avoid an unlawful concession or discrimination. Therefore, the situation in that case involving the violation of Section 41(1) of the Elkins Act, supra, is significantly different from that presently facing the court.[6]

In issuing the credit order Ex Parte No. 73 pursuant to Section 3(2) of the Statute, the Interstate Commerce Commission established a standard of 120 hours as the maximum period within which it was permissible to extend credit on freight charges and within which those charges upon which credit had been extended had to be collected. Therefore payment of these charges within the established standard is required "to prevent unjust discrimination". Discriminations are departures from fixed standards for the benefit of one to the prejudice of another. The discrimination in this case is the departure by the defendant from the credit order and the use by the shipper of the defendant's capital, without interest, which advantage other shippers, who paid their freight bills within the standard 120 hour maximum credit period did not receive.

Unlike Section 3(1) of the Interstate Commerce Act, 49 U.S.C. § 3(1), which

---

5. *Riss, supra,* was an action against a regulated motor carrier for violating the hours of service regulations of the Interstate Commerce Commission. The Court noted at page 251:

"The omissions by defendant in the performance of its duty cannot be excused on the ground that it was accidental or resulted from mere inadvertence. The omissions and failure did not occur in a few isolated situations, but in so many cases in a comparatively short period of time, that it demonstrated a conscious disregard of, or indifference to, the performance of the duty enjoined

upon defendant. From the consistent course and pattern of conduct established by the evidence, we hold the trial court was fully justified in finding the existence of the essential elements of the offense."

6. It is also of some significance to note that the Court in *Continental* commented at page 969:

"Of course, if the evidence had shown a long-standing record of unobjected-to late payments, a course of action amounting to the giving and receiving of discriminatory credit might be found."

...t have an established standard ...ion 3(2) has and which does re-...Commission hearings to determine ...e and unreasonable preferences or ...riminations, Section 3(2) by its very ...nguage indicates that the timely col-...ection of charges upon delivery of freight or under Commission order is necessary "to prevent unjust discrimination". Any deviation beyond the authorized maximum standard of 120 hours constitutes a discrimination in favor of the party obtaining a longer credit period than that prescribed by the Commission's order.

The Interstate Commerce Commission in Ex Parte 73, 57 I.C.C. 591 (June 4, 1920), when originally considering the issuance of credit regulations pursuant to the authority of then Section 405,[7] stated as follows:

"Section 405 provides that, after July 1, 1920, no railroad shall relinquish possession of freight at destination until all rates and charges thereon have been paid, except under such rules as the Commission may prescribe to assure prompt payment and to prevent unjust discrimination. The latter provision virtually continues the operation of General Order No. 25 of the Railroad Administration, as supplemented relating to the extension of credits by railroads."[8]

It is therefore apparent that the standard established by the Commission's order had as its purpose the prevention of unjust discrimination, and that an extension of credit by the carrier beyond the 120 hour maximum, in effect, furnishes to the non-paying shipper working capital without interest and, thereby, effects a discrimination of the type which the Commission and Congress intended to prevent.

This court, therefore, concludes that for the reasons included herein, no genuine issue as to any material fact exists and that plaintiff's motion for summary judgment should be granted.

---

7. Section 3(2) of the Interstate Commerce Act was originally enacted as Section 405 of the Transportation Act of 1920.

8. The above was quoted from the report to the House of Representatives of the Committee of Conference upon the Senate and House bills which became the Transportation Act of 1920.